# EXHIBIT A

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:** BRENNTAG NORTH AMERICA, INC. (sued
*(AVISO AL DEMANDADO):* individually and as successor-in-interest to MINERAL
PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER
CLARK & DANIELS, INC.) [SEE ADDITIONAL DEFENDANTS LIST]

**YOU ARE BEING SUED BY PLAINTIFF:** CAROLYN WEIRICK
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

APR 04 2017

Sherri R. Carter, Executive Officer/Clerk
By: Gloriella Robinson, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp),* your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site *(www.lawhelpcalifornia.org),* the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp),* or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of Los Angeles<br>111 NORTH HILL STREET | **CASE NUMBER:**<br>*(Número del Caso):*<br>**BC 6 5 6 4 2 5** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: LEAH C. KAGAN
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
SIMON GREENSTONE PANATIER BARTLETT
3780 Kilroy Airport Way, Ste. 540, Long Beach, CA 90806    Gloriella Robinson  562-590-3400

DATE:                                                  Sherri R. Carter, Clerk, by _____ , Deputy
*(Fecha)* APR 04 2017              *(Secretario)*                                                    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* JOHNSON + JOHNSON Consumer INC

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
Westlaw Doc & Form Builder

SUM-200(A)

| SHORT TITLE: CAROLYN WEIRICK vs. BRENNTAG NORTH AMERICA, INC., et al. | CASE NUMBER: |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☒ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.);
CAL OAKS PHARMACY, INC.;
CHANEL, INC.;
CYPRUS AMAX MINERALS COMPANY (sued individually, doing business as, and as successor to METROPOLITAN TALC CO. and CHARLES MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY);
IMERYS TALC AMERICA, INC. (sued individually and as successor-in-interest to LUZENAC AMERICA, INC. successor-in-interest to CYPRUS INDUSTRIAL MINERALS COMPANY);
JOHNSON & JOHNSON;
JOHNSON & JOHNSON CONSUMER INC., a subsidiary of JOHNSON & JOHNSON;
VALEANT PHARMACEUTICALS INTERNATIONAL CORPORATION;
VALEANT PHARMACEUTICALS NORTH AMERICA LLC;
WHITTAKER CLARK & DANIELS, INC.; and
DOES 1-450

Page __1__ of __1__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

ADDITIONAL PARTIES ATTACHMENT
Attachment to Summons

Westlaw Doc & Form Builder™

1  JENNIFER L. BARTLETT, CA Bar No. 183154
   LEAH KAGAN, CA BAR No. 283925
2  SIMON GREENSTONE PANATIER BARTLETT, P. C.
   3780 Kilroy Airport Way, Suite 540
3  Long Beach, California 90806
   Telephone (562) 590-3400
4  Facsimile (562) 590-3412

5  Attorneys for Plaintiff

**CONFORMED COPY**
**ORIGINAL FILED**
Superior Court of California
County of Los Angeles

APR 0 4 2017

Sherri R. Carter, Executive Officer/Clerk
By: Glorietta Robinson, Deputy

6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                  **FOR THE COUNTY OF LOS ANGELES**

10

11  **CAROLYN WEIRICK,**                    Case No.      **BC 6 5 6 4 2 5**

12                        Plaintiff,        **COMPLAINT FOR**
                                            **PERSONAL INJURY– ASBESTOS**
13          vs.                             **(NEGLIGENCE; STRICT LIABILITY)**

14  **BRENNTAG NORTH AMERICA,**
    **INC.** (sued individually and as successor-
15  in-interest to MINERAL PIGMENT
    SOLUTIONS, INC. and as successor-in-
16  interest to WHITTAKER CLARK &
    DANIELS, INC.);
17  **BRENNTAG SPECIALTIES, INC.**
    f/k/a MINERAL PIGMENT
18  SOLUTIONS, INC. (sued individually
    and as successor-in-interest to
19  WHITTAKER CLARK & DANIELS,
    INC.);
20  **CAL OAKS PHARMACY, INC.;**
    **CHANEL, INC.;**
21  **CYPRUS AMAX MINERALS**
    **COMPANY** (sued individually, doing
22  business as, and as successor to
    METROPOLITAN TALC CO. INC. and
23  CHARLES MATHIEU INC. and
    SIERRA TALC COMPANY and
24  UNITED TALC COMPANY);
    **IMERYS TALC AMERICA, INC.**
25  (sued individually and as successor-in-
    interest to LUZENAC AMERICA, INC.
26  successor-in-interest to CYPRUS
    INDUSTRIAL MINERALS
27  COMPANY);
    **JOHNSON & JOHNSON;**
28  **JOHNSON & JOHNSON**

                                   1

1 | **CONSUMER INC.**, a subsidiary of
**JOHNSON & JOHNSON**;
2 | **VALEANT PHARMACEUTICALS**
**INTERNATIONAL CORPORATION**;
3 | **VALEANT PHARMACEUTICALS**
**NORTH AMERICA LLC**;
4 | **WHITTAKER CLARK & DANIELS,**
**INC.**; and
5 | **DOES 1-450,**

Defendants.

6

## GENERAL ALLEGATIONS

7      COMES NOW Plaintiff, CAROLYN WEIRICK (hereinafter "Plaintiff"), and

8 complains and alleges as follows:

9      1.      The true names and capacities, whether individual, corporate, associate,

10 governmental or otherwise of Defendant DOES 1 through 450, inclusive, are unknown to

11 Plaintiff at this time, who therefore sues said Defendants by such fictitious names.  When the

12 true names and capacities of said Defendants have been ascertained, Plaintiff will amend this

13 complaint accordingly.  Plaintiff is informed and believes, and thereon alleges, that each

14 Defendant designated herein as a DOE is responsible, negligently or in some other actionable

15 manner, for the events and happenings hereinafter referred to, and caused injuries and damages

16 proximately thereby to the Plaintiff, as hereinafter alleged.

17      2.      At all times herein mentioned, each of the Defendants were the agent, servant,

18 employee and/or joint venture of its Co-Defendants, and each of them, and at all said times

19 each Defendant was acting in the full course and scope of said agency, service, employment

20 and/or joint venture.  Plaintiff is informed and believes, and thereon alleges that at all times

21 herein mentioned, Defendants **BRENNTAG NORTH AMERICA, INC.** (sued individually

22 and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-

23 in-interest to WHITTAKER CLARK & DANIELS, INC.), **BRENNTAG SPECIALTIES,**

24 **INC.** f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-

25 interest to WHITTAKER CLARK & DANIELS, INC.), **CAL OAKS PHARMACY, INC.,**

26 **CHANEL, INC., CYPRUS AMAX MINERALS COMPANY** (sued individually, doing

27 business as, and as successor to METROPOLITAN TALC CO. INC. and CHARLES

28 MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY),

**2**

1   **IMERYS TALC AMERICA, INC.** (sued individually and as successor-in-interest to
2   LUZENAC AMERICA, INC. successor-in-interest to CYPRUS INDUSTRIAL MINERALS
3   COMPANY), **JOHNSON & JOHNSON, JOHNSON & JOHNSON CONSUMER INC.**, a
4   subsidiary of JOHNSON & JOHNSON, **VALEANT PHARMACEUTICALS**
5   **INTERNATIONAL CORPORATION, VALEANT PHARMACEUTICALS NORTH**
6   **AMERICA LLC, WHITTAKER CLARK & DANIELS, INC.** and **DOES 1-450** inclusive,
7   were individuals, corporations, partnerships and/or unincorporated associations organized and
8   existing under and by virtue of the laws of the State of California, or the laws of some other
9   state or foreign jurisdiction, and that said Defendants, and each of them, were and are
10  authorized to do and are doing business in the State of California, or the laws of some other
11  state or foreign jurisdiction, and that said Defendants, and each of them, were and are
12  authorized to do and are doing business in the State of California, and that said Defendants
13  have regularly conducted business in the County of Los Angeles, State of California.

14      3.      Plaintiff alleges herein that she developed malignant mesothelioma as a result of
15  exposure to asbestos from Defendants' asbestos, and/or raw asbestos fiber of various kinds and
16  grades, and/or asbestos-containing products, and/or asbestos-containing talc and/or other
17  finished and unfinished asbestos-containing talcum powder products, and/or equipment
18  requiring and/or calling for the use of asbestos and/or asbestos-containing products, and/or
19  products designed to cut, saw, or otherwise manipulate, and/or equipment solely designed to
20  be used with asbestos-containing products including: **BRENNTAG NORTH AMERICA,**
21  **INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS,
22  INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) (*as a*
23  *supplier of asbestos-containing talc*); **BRENNTAG SPECIALTIES, INC.** f/k/a MINERAL
24  PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to
25  WHITTAKER CLARK & DANIELS, INC.) (*as a supplier of asbestos-containing talc*); **CAL**
26  **OAKS PHARMACY, INC.** (*as a supplier of asbestos-containing talcum powder products*);
27  **CHANEL, INC.** (*for asbestos-containing Chanel No. 5 Body Powder*); **CYPRUS AMAX**
28  **MINERALS COMPANY** (sued individually, doing business as, and as successor to

1   METROPOLITAN TALC CO. INC. and CHARLES MATHIEU INC. and SIERRA TALC

2   COMPANY and UNITED TALC COMPANY) (*as a supplier of asbestos-containing talc*);

3   **IMERYS TALC AMERICA, INC.** (sued individually and as successor-in-interest to

4   LUZENAC AMERICA, INC. successor-in-interest to CYPRUS INDUSTRIAL MINERALS

5   COMPANY) (*as a supplier of asbestos-containing talc*); **JOHNSON & JOHNSON** (*for*

6   *asbestos-containing Johnson's Baby Powder and Shower-to-Shower talcum powder*);

7   **JOHNSON & JOHNSON CONSUMER INC.**, a subsidiary of JOHNSON & JOHNSON

8   (*for asbestos-containing Shower-to-Shower talcum powder*); **VALEANT**

9   **PHARMACEUTICALS INTERNATIONAL CORPORATION** (*for asbestos-containing*

10  *Shower-to-Shower talcum powder*); **VALEANT PHARMACEUTICALS NORTH**

11  **AMERICA LLC** (*for asbestos-containing Shower-to-Shower talcum powder*); and

12  **WHITTAKER CLARK & DANIELS, INC.** (*as a supplier of asbestos-containing talc*).

13                          **FIRST CAUSE OF ACTION**

14                              (Negligence)

15      PLAINTIFF COMPLAINS OF DEFENDANTS AND DOES 1-450, THEIR
    "ALTERNATE ENTITIES", AND EACH OF THEM, AND FOR A CAUSE OF ACTION
16  FOR NEGLIGENCE ALLEGES AS FOLLOWS:

17      4.   Plaintiff incorporates herein by reference, as though fully set forth therein, the

18  general allegations set forth above.

19      5.   At all times herein mentioned, each of the named Defendants and DOES 1

20  through 450 were the successor, successor-in-business, successor-in-product line or a portion

21  thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or

22  member in an entity researching, studying, manufacturing, fabricating, designing, modifying,

23  labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling,

24  inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting,

25  re-branding, manufacturing for others, packaging and advertising asbestos, and/or raw asbestos

26  fiber of various kinds and grades, and/or asbestos-containing products, and/or asbestos-

27  containing talc and/or other finished and unfinished asbestos-containing talcum powder

28  products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-

1  containing products, and/or products designed to cut, saw, or otherwise manipulate, and/or

2  equipment solely designed to be used with asbestos-containing products including, but not

3  limited to, those products identified in paragraph 3 above.  Said entities shall hereinafter

4  collectively be called "alternate entities."  Each of the herein named Defendants is liable for

5  the tortious conduct of each successor, successor-in-business, successor-in-product line or a

6  portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary,

7  whole or partial owner, or wholly or partially owned entity, or entity that it was a member of,

8  or funded, that researched, repaired, marketed, warranted, re-branded, manufactured for others

9  and advertised asbestos, and/or raw asbestos fiber of various kinds and grades, and/or

10  asbestos-containing products, and/or asbestos-containing talc and/or other finished and

11  unfinished asbestos-containing talcum powder products, and/or equipment requiring and/or

12  calling for the use of asbestos and/or asbestos-containing products, and/or products designed to

13  cut, saw, or otherwise manipulate, and/or equipment solely designed to be used with asbestos-

14  containing products.  The following Defendants, and each of them, are liable for the acts of

15  each and every "alternate entity", and each of them, in that there has been a virtual destruction

16  of Plaintiff's remedy against each such "alternate entity"; Defendants, and each of them, have

17  acquired the assets, product line, or a portion thereof, of each such "alternate entity";

18  Defendants, and each of them, have caused the destruction of Plaintiff's remedy against each

19  such "alternate entity"; each such Defendant has the ability to assume the risk-spreading role

20  of each such "alternate entity"; and that each such Defendant enjoys the goodwill originally

21  attached to each such "alternate entity".

22

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| BRENNTAG NORTH AMERICA, INC. | MINERAL PIGMENT SOLUTIONS, INC WHITTAKER, CLARK & DANIELS, INC. |
| BRENNTAG SPECIALTIES, INC. | MINERAL PIGMENT SOLUTIONS, INC. WHITTAKER, CLARK & DANIELS, INC. |
| CYPRUS AMAX MINERALS COMPANY | SIERRA TALC COMPANY UNITED TALC COMPANY METROPOLITAN TALC CO. INC. CHARLES MATHIEU INC. |

23

24

25

26

27

28

5

IMERYS TALC AMERICA, INC.        LUZENAC AMERICA, INC.
                                 CYPRUS INDUSTRIAL MINERALS
                                 COMPANY

JOHNSON & JOHNSON CONSUMER INC.   JOHNSON & JOHNSON

6.      At all times herein mentioned, Defendants, their "alternate entities", and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, renting, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising asbestos, and/or raw asbestos fiber of various kinds and grades, and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products, and/or products designed to cut, saw, or otherwise manipulate, and/or equipment solely designed to be used with asbestos-containing products (hereinafter "Defendants' Products").

7.      At all times herein mentioned, Defendants, their "alternate entities", and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, specified, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, failed to recall and/or retrofit, labeled, assembled, distributed, leased, bought, rented, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised Defendants' Products including, but not limited to, those products identified in paragraph 3 above, in that the Defendants' Products were unreasonably dangerous because they released respirable asbestos fibers which resulted in personal injuries to users, consumers, workers, bystanders, and others, including Plaintiff CAROLYN WEIRICK herein (hereinafter collectively called "exposed persons"). Defendants' Products were used at all times in a manner that was reasonably foreseeable to Defendants, their "alternate entities", and each of them, thereby rendering Defendants' Products unsafe and dangerous for use by "exposed

1  persons". Plaintiff herein alleges that CAROLYN WEIRICK was exposed to asbestos that

2  was caused to be released as a result of exposure to Defendants' Products including, but not

3  limited to, those products identified in paragraph 3 above, which were a substantial

4  contributing factor in the development of her malignant mesothelioma, and therefore

5  proximately caused Plaintiff CAROLYN WEIRICK's injuries.

6        8.    Defendants, their "alternate entities", and each of them, had a duty to exercise

7  reasonable care while engaging in the activities mentioned above and each Defendant breached

8  said duty of reasonable care in that Defendants, and each of them, failed to safely and

9  adequately design, manufacture and/or sell Defendants' Products; failed to test said products;

10  failed to recall and/or retrofit; failed to investigate the hazards of said products; failed to warn

11  "exposed persons", including Plaintiff CAROLYN WEIRICK and her Mother, of the health

12  hazards of using said products; failed to disclose the known or knowable dangers of using

13  Defendants' Products; failed to warn of the harmful exposures caused by use of Defendants'

14  Products; failed to recall and/or retrofit; failed to obtain suitable alternative materials to

15  asbestos when such alternatives were available; and as otherwise stated herein.

16        9.    The Defendants' Products were and are hazardous to the health and safety of

17  Plaintiff, and others in Plaintiff's position personally using and in close proximity to such

18  products, and since on or before 1930, the hazards and dangerous propensities of the

19  Defendants' Products were both known and knowable to the Defendants, their "alternate

20  entities", and each of them, through the use of medical and/or scientific data and other

21  knowledge available to Defendants, their "alternate entities", and each of them, at the time of

22  Defendants' manufacture, distribution, sale, research, study, fabrication, design, modification,

23  labeling, assembly, leasing, buying, offering for sale, supply, inspection, service, installation,

24  contracting for installation, repair, marketing, warranting, re-branding, re-manufacturing for

25  others, packaging and advertising of Defendants' Products, which clearly indicated the hazards

26  and dangerous propensities of asbestos presented a substantial danger to users, including

27  Plaintiff CAROLYN WEIRICK and her Mother, of Defendants' Products through the intended

28  and reasonably foreseeable use of those products.

10. Defendants, their "alternate entities", and each of them, knew, or reasonably should have known, that Defendants' Products were dangerous and were likely to be dangerous when used in their intended and reasonably foreseeable manner.

11. Defendants, their "alternate entities", and each of them, knew, or reasonably should have known, that Defendants' Products would be personally used, installed, repaired, maintained, overhauled, removed, sawed, chipped, hammered, mixed, scraped, sanded, swept, broken, "ripped out," and/or used to cut, saw, grind, or otherwise manipulate products containing asbestos, or otherwise disturbed in their ordinary, intended and foreseeable use, resulting in the release of airborne hazardous and dangerous asbestos fibers, and that through such activity, "exposed persons," including Plaintiff CAROLYN WEIRICK herein, would be exposed to hazardous and dangerous asbestos fibers. Defendants, their "alternate entities", and each of them, knew or reasonably should have known that users, such as Plaintiff CAROLYN WEIRICK and her Mother, and others in Plaintiff's position using and in close proximity to Defendants' Products, would not realize or know the danger. Defendants, their "alternate entities", and each of them, negligently failed to adequately warn or instruct of the dangers of Defendants' Products and failed to recall and/or retrofit the products. A reasonable designer, manufacturer, distributor, seller, installer, buyer or supplier, under the same or similar circumstances, would have warned of the dangers to avoid exposing others to a foreseeable risk of harm. The negligent failure of Defendants, their "alternate entities", and each of them, to warn was a substantial factor in causing harm to Plaintiff CAROLYN WEIRICK.

12. Plaintiff CAROLYN WEIRICK and her Mother personally used, handled, or were otherwise exposed to asbestos from Defendants' Products referred to herein in a manner that was reasonably foreseeable to Defendants, and each of them. Plaintiff's exposure to Defendants' Products occurred at various locations set forth in **Exhibit "A"**, which is attached hereto and incorporated by reference herein.

13. As a direct and proximate result of the conduct of the Defendants, their "alternate entities", and each of them, as aforesaid, Plaintiff CAROLYN WEIRICK's exposure to asbestos from her personal use and her Mother's use of Defendants' Products caused severe

1    and permanent injury to the Plaintiff, the nature of which, along with the date of Plaintiff's

2    diagnosis and the date she learned such injuries were attributable to exposure to Defendants'

3    Products, are set forth in **Exhibit "B"**, which is attached hereto and incorporated by reference

4    herein. Plaintiff is informed and believes, and thereon alleges, that progressive lung disease,

5    cancer and other serious diseases are caused by inhalation of asbestos fibers without

6    perceptible trauma and that said disease results from exposure to Defendants' Products over a

7    period of time.

8        14.    Plaintiff CAROLYN WEIRICK suffers from malignant pleural mesothelioma

9    caused by exposure to asbestos from Defendants' Products and/or from the use of Defendants'

10   Products, including those products identified in paragraph 3 above.  Plaintiff CAROLYN

11   WEIRICK was not aware at the time of exposure that Defendants' Products presented any risk

12   of injury and/or disease.

13       15.    As a direct and proximate result of the aforesaid conduct of Defendants, their

14   "alternate entities", and each of them, Plaintiff CAROLYN WEIRICK has suffered and will

15   continue to suffer permanent injuries and future injuries to her person, body and health,

16   including, but not limited to, pain, discomfort, loss of weight, loss of appetite, fatigue,

17   somnolence, lethargy, dyspnea, dysphagia, and other physical symptoms, and the mental and

18   emotional distress attendant thereto, as Plaintiff's malignant mesothelioma progresses, all to

19   her general damage in a sum in excess of the jurisdictional limits of a limited civil case.

20       16.    As a direct and proximate result of the aforesaid conduct of the Defendants, their

21   "alternate entities", and each of them, Plaintiff CAROLYN WEIRICK has incurred, is

22   presently incurring, and will incur in the future, liability for physicians, surgeons, nurses,

23   hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact

24   amount thereof being presently unknown to Plaintiff, subject to proof at trial.

25       17.    As a further direct and proximate result of the said conduct of the Defendants,

26   their "alternate entities", and each of them, Plaintiff has incurred, and will incur, loss of

27   income, wages, profits and commissions, a diminishment of earning potential, and other

28   pecuniary losses, the true and exact amount thereof being presently unknown to Plaintiff,

**9**

1 | subject to proof at trial.

2 |     18.    Plaintiff further alleges that Defendants, their "alternate entities", and each of
3 | them, also engaged in the following wrongful acts:

4 |     (a)    Defendants, their "alternate entities", and each of them, suppressed from all
5 | consumers, including Plaintiff CAROLYN WEIRICK and her Mother, medical and scientific
6 | information concerning the health hazards associated with inhalation of asbestos, including the
7 | substantial risk of injury or death therefrom. Although Defendants, and each of them, knew of
8 | the substantial risks associated with exposure to asbestos, they willfully and knowingly
9 | concealed such information from the users of Defendants' Products in conscious disregard of
10 | the rights, safety and welfare of "exposed persons", including Plaintiff CAROLYN WEIRICK;

11 |     (b)    Defendants, their "alternate entities", and each of them, belonged to, participated
12 | in, and financially supported industry organizations including, but not limited to, the Cosmetic
13 | Toiletry and Fragrance Association (now Personal Care Products Council), the Gypsum
14 | Association, Asbestos Information Association, Industrial Hygiene Foundation and others,
15 | which, for and on behalf of Defendants, their "alternate entities", and each of them, actively
16 | promoted the suppression of information about the dangers of asbestos to users of the
17 | aforementioned Defendants' Products, thereby misleading Plaintiff CAROLYN WEIRICK
18 | and her Mother as to the safety of their products. Through their participation and association
19 | with such industry organizations, Defendants, and each of them, knowingly and deliberately
20 | concealed and suppressed the true information regarding asbestos and its dangers, and
21 | propagated misinformation intended to instill in users of Defendants' Products a false security
22 | about the safety of their products. The Dust Control Committee, which changed its name to
23 | the Air Hygiene Committee of the Asbestos Textile Institute, was specifically enlisted to study
24 | the subject of dust control. Discussions in this committee were held many times regarding the
25 | dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and
26 | such information was suppressed from public dissemination from 1946 to a date unknown to
27 | Plaintiff CAROLYN WEIRICK at this time;

28 |     (c)    Commencing in 1930 with the study of mine and mill workers at Asbestos and

1  Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan

2  plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities", and

3  each of them, knew and possessed medical and scientific information of the connection

4  between the inhalation of asbestos fibers and asbestosis, which information was disseminated

5  through the Asbestos Textile Institute and other industry organizations to all other Defendants,

6  their "alternate entities", and each of them, herein.  Between 1942 and 1950, the Defendants,

7  their "alternate entities", and each of them, failed to provide this information to consumers;

8        (d)    Defendants, their "alternate entities", and each of them, failed to warn Plaintiff

9  CAROLYN WEIRICK, her Mother, and others of the nature of Defendants' Products which

10  were dangerous when breathed and which could cause pathological effects without noticeable

11  trauma, despite the fact that Defendants, their "alternate entities", and each of them, possessed

12  knowledge and were under a duty to disclose that said products were dangerous and a threat to

13  the health of persons coming into contact therewith;

14        (e)    Defendants, their "alternate entities", and each of them, failed to provide

15  Plaintiff CAROLYN WEIRICK or her Mother with information concerning adequate

16  protective masks and other equipment devised to be used when applying, mixing, sawing,

17  cutting, installing and sanding Defendants' Products, and/or from the use of Defendants'

18  Products, their "alternate entities", and each of them, despite knowing that such protective

19  measures were necessary, and that they were under a duty to disclose that such materials were

20  dangerous and would result in injury to Plaintiff CAROLYN WEIRICK and others when

21  personally using, applying, installing and exposed to Defendants' Products;

22        (f)    Defendants, their "alternate entities", and each of them, knew and failed to

23  disclose that Plaintiff CAROLYN WEIRICK and anyone similarly situated, upon inhalation of

24  asbestos would, in time, have a substantial risk of developing irreversible conditions of

25  pneumoconiosis, asbestosis, mesothelioma and/or cancer;

26        (g)    Defendants, their "alternate entities", and each of them, failed to provide

27  information of the true nature of the hazards of asbestos-containing materials and that

28  exposure to these materials would cause pathological effects without noticeable trauma to the

1  public, including buyers, users, and physicians employed by Plaintiff CAROLYN WEIRICK

2  so that said physicians could not examine, diagnose, and treat Plaintiff and others who were

3  exposed to asbestos, despite the fact that Defendants, their "alternate entities", and each of

4  them, were under a duty to so inform and said failure was misleading.

5       19.    Defendants, their "alternate entities", and each of them, and their officers,

6  directors, and managing agents participated in, authorized, expressly and impliedly ratified,

7  and had full knowledge of, or should have known of, each of the acts set forth herein.

8  Defendants, their "alternate entities", and each of them, are liable for the oppressive and

9  malicious acts of their "alternate entities", and each of them, and each Defendant's officers,

10  directors, and managing agents participated in, authorized, expressly and impliedly ratified,

11  and had full knowledge of, or should have known of, the acts of each of their "alternate

12  entities" as set forth herein.

13       20.    The herein-described conduct of said Defendants, their "alternate entities", and

14  each of them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard

15  and indifference to the safety and health of "exposed persons," including Plaintiff CAROLYN

16  WEIRICK, in that Defendants, and each of them, continued to manufacture, market and/or sell

17  Defendants' Products known to cause asbestos to be released and to cause severe, permanent

18  injuries and death, despite possessing knowledge of the substantial hazards posed by use of

19  Defendants' Products, in order to continue to profit financially therefrom.  Defendants, their

20  "alternate entities", and each of them, engaged in such conduct so despicable, contemptible,

21  base, vile, miserable, wretched and loathsome as to be looked down upon and despised by

22  ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil

23  Code section 3294.  Plaintiff, for the sake of example and by way of punishing Defendants,

24  seeks punitive damages according to proof.

25       21.    Defendants, and each of them, engaged in conduct which was intended by

26  Defendants, and each of them, to cause injury to the Plaintiff, and despicable conduct which

27  was carried on by the Defendants with a willful and conscious disregard of the rights or safety

28  of others, including Plaintiff CAROLYN WEIRICK.

22.     Defendants, and each of them, engaged in the despicable conduct described herein that subjected persons, including Plaintiff CAROLYN WEIRICK, to cruel and unjust hardship in the form of severe, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those persons' rights.

23.     As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities", and each of them, Plaintiff CAROLYN WEIRICK sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiff prays for judgment against Defendants, their "alternate entities", and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION
### (Strict Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFF COMPLAINS OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

24.     Plaintiff incorporates herein by reference, as though fully set forth therein, each and every one of the general allegations and the allegations contained in the First Cause of Action herein.

25.     Defendants, their "alternate entities", and each of them, sold the aforementioned Defendants' Products, which were defective in that they failed to adequately warn or instruct of the known and knowable dangers and risks of the ordinary, intended, and foreseeable use of said products, which dangers and risks would not have been, and were not, recognized by ordinary consumers of Defendants' Products, including Plaintiff CAROLYN WEIRICK and her Mother, and the lack of sufficient instructions and/or warnings was a substantial factor in causing harm to Plaintiff CAROLYN WEIRICK and others in Plaintiff's position personally using, working with, and in close proximity to Defendants' Products.

26.     Defendants' Products were defective and unsafe for their intended purpose and foreseeable use in that when used, handled, installed, repaired, maintained, overhauled, removed, sawed, chipped, hammered, mixed, scraped, sanded, swept, broken, "ripped out," and/or used to cut, saw, grind, or otherwise manipulate products containing asbestos, or

13

1   otherwise disturbed, said products would result in the release, and therefore inhalation of,
2   hazardous and dangerous asbestos fibers by exposed persons, including Plaintiff CAROLYN
3   WEIRICK. The defect existed in all of Defendants' Products when they left the possession of
4   the Defendants, their "alternate entities", and each of them. At the time Defendants' Products
5   were used by Plaintiff CAROLYN WEIRICK and her Mother, and others in Plaintiff's
6   position personally using, working with, and in close proximity to said products, the products
7   were substantially the same as when they left the possession of the Defendants, their "alternate
8   entities", and each of them, and/or any changes made to said products after they left the
9   possession of Defendants, their "alternate entities", and each of them, were reasonably
10  foreseeable to Defendants, their "alternate entities", and each of them. Defendants' Products
11  were used by Plaintiff CAROLYN WEIRICK and her Mother, and others in Plaintiff's
12  position personally using, working with, and in close proximity to said products in a way that
13  was reasonably foreseeable to Defendants, and each of them. The defect in Defendants'
14  Products was a substantial factor in causing harm and personal injuries to Plaintiff CAROLYN
15  WEIRICK, including malignant mesothelioma, while being used in a reasonably foreseeable
16  manner, thereby rendering Defendants' Products defective, unsafe, and unreasonably
17  dangerous for their ordinary and intended use.

18      27.    As a direct and proximate result of the actions and conduct outlined herein,
19  Defendants' Products were defective in that they failed to perform as safely as an ordinary
20  consumer would have expected in that Defendants' Products, and each of them, caused
21  respirable asbestos fibers to be released from Defendants' Products during their ordinary and
22  intended use, and such hazardous exposures lacked any perceptible qualities to the human
23  body, yet they cause severe and fatal diseases, including asbestosis, lung cancer, mesothelioma
24  and other cancers in humans. Plaintiff further alleges that "exposed persons", including
25  Plaintiff CAROLYN WEIRICK, were unaware of the harmful effects of asbestos and further
26  unaware of the harmful exposures to Defendants' Products when such exposures occurred, and
27  thus the failure of Defendants' Products to perform as safely as Plaintiff CAROLYN
28  WEIRICK had reason to expect was a substantial factor in causing her injuries. Moreover,

1  Defendants' Products were also defective in their design under the "risk/benefit test" of design
2  defect because the risks of said products outweighed their benefits.

3      28.   As a direct and proximate result of the actions and conduct outlined herein,
4  Plaintiff CAROLYN WEIRICK has suffered the injuries and damages alleged herein.

5      29.   Plaintiff further alleges that Defendants, their "alternate entities", and each of
6  them, also engaged in the following wrongful acts:

7      (a)   Defendants, their "alternate entities", and each of them, suppressed from all
8  consumers, including Plaintiff CAROLYN WEIRICK and her Mother, medical and scientific
9  information concerning the health hazards associated with inhalation of asbestos, including the
10  substantial risk of injury or death therefrom.  Although Defendants, and each of them, knew of
11  the substantial risks associated with exposure to asbestos, they willfully and knowingly
12  concealed such information from the users of Defendants' Products in conscious disregard of
13  the rights, safety and welfare of "exposed persons", including Plaintiff CAROLYN WEIRICK;

14      (b)   Defendants, their "alternate entities", and each of them, belonged to, participated
15  in, and financially supported industry organizations including, but not limited to, the Cosmetic
16  Toiletry and Fragrance Association (now Personal Care Products Council), the Gypsum
17  Association, Asbestos Information Association, Industrial Hygiene Foundation and others,
18  which, for and on behalf of Defendants, their "alternate entities", and each of them, actively
19  promoted the suppression of information about the dangers of asbestos to users and bystanders
20  of the aforementioned Defendants' Products, thereby misleading Plaintiff CAROLYN
21  WEIRICK and her Mother as to the safety of said products.  Through their participation and
22  association with such industry organizations, Defendants, and each of them, knowingly and
23  deliberately concealed and suppressed the true information regarding asbestos and its dangers,
24  and propagated misinformation intended to instill in users of and bystanders to Defendants'
25  Products a false security about the safety of said products.  The Dust Control Committee,
26  which changed its name to the Air Hygiene Committee of the Asbestos Textile Institute, was
27  specifically enlisted to study the subject of dust control.  Discussions in this committee were
28  held many times regarding the dangers inherent in asbestos and the dangers, which arise from

1  the lack of control of dust, and such information was suppressed from public dissemination

2  from 1946 to a date unknown to Plaintiff CAROLYN WEIRICK at this time;

3       (c)    Commencing in 1930 with the study of mine and mill workers at Asbestos and

4  Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan

5  plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities", and

6  each of them, knew and possessed medical and scientific information of the connection

7  between the inhalation of asbestos fibers and asbestosis, which information was disseminated

8  through the Asbestos Textile Institute and other industry organizations to all other Defendants,

9  their "alternate entities", and each of them, herein.  Between 1942 and 1950, the Defendants,

10  their "alternate entities", and each of them, failed to provide this information to consumers;

11       (d)    Defendants, their "alternate entities", and each of them, failed to warn Plaintiff

12  CAROLYN WEIRICK, her Mother, and others of the nature of Defendants' Products which

13  were dangerous when breathed and which could cause pathological effects without noticeable

14  trauma, despite the fact that Defendants, their "alternate entities", and each of them, possessed

15  knowledge and were under a duty to disclose that said products were dangerous and a threat to

16  the health of persons coming into contact therewith;

17       (e)    Defendants, their "alternate entities", and each of them, failed to provide

18  Plaintiff CAROLYN WEIRICK and her Mother with information concerning adequate

19  protective masks and other equipment devised to be used when personally using, applying,

20  mixing, sawing, cutting, installing and sanding Defendants' Products, their "alternate entities",

21  and each of them, despite knowing that such protective measures were necessary, and that they

22  were under a duty to disclose that Defendants' Products were dangerous and would result in

23  injury to Plaintiff CAROLYN WEIRICK and others personally using, applying and installing

24  Defendants' Products;

25       (f)    Defendants, their "alternate entities", and each of them, knew and failed to

26  disclose that Plaintiff CAROLYN WEIRICK and anyone similarly situated, upon inhalation of

27  asbestos would, in time, have a substantial risk of developing irreversible conditions of

28  pneumoconiosis, asbestosis, mesothelioma and/or cancer;

**COMPLAINT FOR PERSONAL INJURY – ASBESTOS**

1      (g)   Defendants, their "alternate entities", and each of them, failed to provide

2 information of the true nature of the hazards Defendants' Products and that exposure to said

3 products would cause pathological effects without noticeable trauma to the public, including

4 buyers, users, and physicians employed by Plaintiff CAROLYN WEIRICK so that said

5 physicians could not examine, diagnose, and treat Plaintiff and others who were exposed to

6 asbestos, despite the fact that Defendants, their "alternate entities", and each of them, were

7 under a duty to so inform and said failure was misleading.

8      30.   Defendants, their "alternate entities", and each of them, and their officers,

9 directors, and managing agents participated in, authorized, expressly and impliedly ratified,

10 and had full knowledge of, or should have known of, each of the acts set forth herein.

11 Defendants, their "alternate entities", and each of them, are liable for the oppressive and

12 malicious acts of their "alternate entities", and each of them, and each Defendant's officers,

13 directors, and managing agents participated in, authorized, expressly and impliedly ratified,

14 and had full knowledge of, or should have known of, the acts of each of their "alternate

15 entities" as set forth herein.

16      31.   The herein-described conduct of Defendants, their "alternate entities", and each

17 of them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard and

18 indifference to the safety and health of "exposed persons," including Plaintiff CAROLYN

19 WEIRICK, in that Defendants, and each of them, continued to manufacture, market and/or sell

20 dangerous products known to cause severe, permanent injuries and death, despite possessing

21 knowledge of the substantial hazards posed by use of Defendants' Products, in order to

22 continue to profit financially therefrom.  Defendants, their "alternate entities", and each of

23 them, engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched

24 and loathsome as to be looked down upon and despised by ordinary people and justifies an

25 award of punitive and exemplary damages pursuant to Civil Code section 3294.  Plaintiff, for

26 the sake of example and by way of punishing said Defendants, seeks punitive damages

27 according to proof.

28      32.   Defendants, and each of them, engaged in conduct which was intended by

1 | Defendants, and each of them, to cause injury to the Plaintiff, and despicable conduct which
2 | was carried on by the Defendants with a willful and conscious disregard of the rights or safety
3 | of others, including Plaintiff CAROLYN WEIRICK.

4 |     33.    Defendants, and each of them, engaged in the despicable conduct described
5 | herein that subjected persons, including Plaintiff CAROLYN WEIRICK, to cruel and unjust
6 | hardship in the form of severe, debilitating and fatal diseases like asbestosis, lung cancer and
7 | mesothelioma, in conscious disregard of those persons' rights.

8 |     34.    As a direct and proximate result of such intentional conduct by Defendants, their
9 | "alternate entities", and each of them, Plaintiff CAROLYN WEIRICK sustained the injuries
10 | and damages alleged herein.

11 |     WHEREFORE, Plaintiff prays for judgment against Defendants, and their "alternate
12 | entities", and each of them, as hereinafter set forth.

13 |     Plaintiff CAROLYN WEIRICK:

14 |     1.    For Plaintiff's general damages according to proof;
15 |     2.    For Plaintiff's loss of income, wages, and earning potential according to
16 |     proof;
17 |     3.    For Plaintiff's medical and related expenses according to proof;
18 |     4.    For Plaintiff's cost of suit herein;
19 |     5.    For exemplary or punitive damages according to proof;
20 |     6.    For such other and further relief as the Court may deem just and proper,
21 |     including costs and prejudgment interest as provided in C.C.P. section 998,
22 |     C.C.P. section 1032, and related provisions of law.

23 | DATED: April 4, 2017    SIMON GREENSTONE PANATIER BARTLETT, P. C.

25 | By: _____
26 | Jennifer L. Bartlett
26 | Leah Kagan
27 | Attorneys for Plaintiff

**18**

**COMPLAINT FOR PERSONAL INJURY – ASBESTOS**

1

## DEMAND FOR JURY TRIAL

2  Plaintiff hereby demands trial by jury as to all issues so triable.

3

4  DATED: April 4, 2017                SIMON GREENSTONE PANATIER BARTLETT, P. C.

5

6                                       By: _____
7                                            Jennifer L. Bartlett
                                             Leah Kagan
8                                            Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19

1

## EXHIBIT "A"

2    Plaintiff CAROLYN WEIRICK's exposure to asbestos and asbestos-containing products

3    occurred at various locations including, but not limited to:

4    | Location of Exposure | Job Title | Exposure Date(s) |
     |---|---|---|

5    | Various Residential Sites including, but not limited to, Palo Alto, California; Riverside, California; Altadena, California; Pasadena, California; San Marino, California; San Francisco, California; Montrose, California; Washington, D.C.; Portland, Oregon; San Gabriel, California | Personal use of talcum powder products; Mother – Leilani Weirick – use of talcum powder products on herself and Plaintiff | Approximately 1958 – 2000's |

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR PERSONAL INJURY – ASBESTOS**

1

## EXHIBIT "B"

2

Plaintiff CAROLYN WEIRICK's exposure to Defendants' Products caused

3   severe and permanent injury to Plaintiff CAROLYN WEIRICK including, but not limited to,

4   mesothelioma. Plaintiff was diagnosed with mesothelioma on or about February 21, 2017.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR PERSONAL INJURY – ASBESTOS



1  JENNIFER L. BARTLETT, CA Bar No. 183154
   LEAH KAGAN, CA BAR No. 283925
2  **SIMON GREENSTONE PANATIER BARTLETT, P. C.**
   3780 Kilroy Airport Way, Suite 540
3  Long Beach, California 90806
   Telephone (562) 590-3400
4  Facsimile (562) 590-3412

5  Attorneys for Plaintiffs

6

7

8           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9              **FOR THE COUNTY OF LOS ANGELES**

10

11 Coordinated Proceeding                J.C.C.P. No. 4674
   Special Title (Rule 3.550)
12                                        Los Angeles County Superior Court
   **LAOSD ASBESTOS CASES**              Case No.  BC656425
13
                                         Coordination Trial Judge
14 **CAROLYN WEIRICK and ELVIRA**        The Honorable Steven Kleifield, Dept. 324
   **GRACIELA ESCUDERO LORA,**
15
                          Plaintiffs,    **FIRST AMENDED COMPLAINT FOR**
16        vs.                            **PERSONAL INJURY– ASBESTOS**
                                         **(NEGLIGENCE; STRICT LIABILITY and**
17                                       **LOSS OF CONSORTIUM)**
   **BRENNTAG NORTH AMERICA,**
18 **INC.** (sued individually and as successor-
   in-interest to MINERAL PIGMENT       Action Filed:      April 4, 2017
19 SOLUTIONS, INC. and as successor-in-
   interest to WHITTAKER CLARK &
20 DANIELS, INC.);
   **BRENNTAG SPECIALTIES, INC.**
21 f/k/a MINERAL PIGMENT
   SOLUTIONS, INC. (sued individually
22 and as successor-in-interest to
   WHITTAKER CLARK & DANIELS,
23 INC.);
   **CAL OAKS PHARMACY, INC.;**
24 **CHANEL, INC.;**
   **CYPRUS AMAX MINERALS**
25 **COMPANY** (sued individually, doing
   business as, and as successor to
26 METROPOLITAN TALC CO. INC. and
   CHARLES MATHIEU INC. and
27 SIERRA TALC COMPANY and
   UNITED TALC COMPANY);
28 **IMERYS TALC AMERICA, INC.**

                              1
     FIRST AMENDED COMPLAINT FOR PERSONAL INJURY -- ASBESTOS

E-SERVICE
60852475
Jul 13 2017
02:29PM
File & ServeXpress

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUL 13 2017

Sherri R. Carter, Executive Officer/Clerk
By: Maria Aguirre, Deputy

(sued individually and as successor-in-
interest to LUZENAC AMERICA, INC.
successor-in-interest to CYPRUS
INDUSTRIAL MINERALS
COMPANY);
**JOHNSON & JOHNSON;**
**JOHNSON & JOHNSON**
**CONSUMER INC.**, a subsidiary of
JOHNSON & JOHNSON;
**VALEANT PHARMACEUTICALS**
**NORTH AMERICA LLC;**
**WHITTAKER CLARK & DANIELS,**
**INC.**; and
**DOES 1-450,**

                                   Defendants.

## GENERAL ALLEGATIONS

      COMES NOW Plaintiffs, CAROLYN WEIRICK and ELVIRA GRACIELA ESCUDERO LORA (hereinafter "Plaintiffs"), and complains and alleges as follows:

      1.    The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of Defendant DOES 1 through 450, inclusive, are unknown to Plaintiffs at this time, who therefore sue said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this Complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Plaintiffs, as hereinafter alleged.

      2.    At all times herein mentioned, each of the Defendants were the agent, servant, employee and/or joint venture of their Co-Defendants, and each of them, and at all said times each Defendant was acting in the full course and scope of said agency, service, employment and/or joint venture. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, Defendants **BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), **BRENNTAG SPECIALTIES, INC.** f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), **CAL OAKS PHARMACY, INC.**,

2

1  CHANEL, INC., CYPRUS AMAX MINERALS COMPANY (sued individually, doing
2  business as, and as successor to METROPOLITAN TALC CO. INC. and CHARLES
3  MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY),
4  IMERYS TALC AMERICA, INC. (sued individually and as successor-in-interest to
5  LUZENAC AMERICA, INC. successor-in-interest to CYPRUS INDUSTRIAL MINERALS
6  COMPANY), JOHNSON & JOHNSON, JOHNSON & JOHNSON CONSUMER INC., a
7  subsidiary of JOHNSON & JOHNSON, VALEANT PHARMACEUTICALS NORTH
8  AMERICA LLC, WHITTAKER CLARK & DANIELS, INC. and DOES 1-450 inclusive,
9  were individuals, corporations, partnerships and/or unincorporated associations organized and
10  existing under and by virtue of the laws of the State of California, or the laws of some other
11  state or foreign jurisdiction, and that said Defendants, and each of them, were and are
12  authorized to do and are doing business in the State of California, or the laws of some other
13  state or foreign jurisdiction, and that said Defendants, and each of them, were and are
14  authorized to do and are doing business in the State of California, and that said Defendants
15  have regularly conducted business in the County of Los Angeles, State of California.
16      3.      Plaintiffs allege herein that Plaintiff CAROLYN WEIRICK developed malignant
17  mesothelioma as a result of exposure to asbestos from Defendants' asbestos, and/or raw
18  asbestos fiber of various kinds and grades, and/or asbestos-containing products, and/or
19  asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum
20  powder products, and/or equipment requiring and/or calling for the use of asbestos and/or
21  asbestos-containing products, and/or products designed to cut, saw, or otherwise manipulate,
22  and/or equipment solely designed to be used with asbestos-containing products including:
23  BRENNTAG NORTH AMERICA, INC. (sued individually and as successor-in-interest to
24  MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER
25  CLARK & DANIELS, INC.) (*as a supplier of asbestos-containing talc*); BRENNTAG
26  SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually
27  and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) (*as a supplier of
28  asbestos-containing talc*); CAL OAKS PHARMACY, INC. (*as a supplier of asbestos-*

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1  *containing talcum powder products*); **CHANEL, INC.** (*for asbestos-containing Chanel No. 5*

2  *Body Powder*); **CYPRUS AMAX MINERALS COMPANY** (sued individually, doing

3  business as, and as successor to METROPOLITAN TALC CO. INC. and CHARLES

4  MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY) (*as a*

5  *supplier of asbestos-containing talc*); **IMERYS TALC AMERICA, INC.** (sued individually

6  and as successor-in-interest to LUZENAC AMERICA, INC. successor-in-interest to CYPRUS

7  INDUSTRIAL MINERALS COMPANY) (*as a supplier of asbestos-containing talc*);

8  **JOHNSON & JOHNSON** (*for asbestos-containing Johnson's Baby Powder and Shower-to-*

9  *Shower talcum powder*); **JOHNSON & JOHNSON CONSUMER INC.**, a subsidiary of

10 JOHNSON & JOHNSON (*for asbestos-containing Shower-to-Shower talcum powder*);

11 **VALEANT PHARMACEUTICALS NORTH AMERICA LLC** (*for asbestos-containing*

12 *Shower-to-Shower talcum powder*); and **WHITTAKER CLARK & DANIELS, INC.** (*as a*

13 *supplier of asbestos-containing talc*).

## FIRST CAUSE OF ACTION

(Negligence)

16  PLAINTIFF COMPLAINS OF DEFENDANTS AND DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES AS FOLLOWS:

18  4.  Plaintiffs incorporates herein by reference, as though fully set forth therein, the

19 general allegations set forth above.

20  5.  At all times herein mentioned, each of the named Defendants and DOES 1

21 through 450 were the successor, successor-in-business, successor-in-product line or a portion

22 thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or

23 member in an entity researching, studying, manufacturing, fabricating, designing, modifying,

24 labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling,

25 inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting,

26 re-branding, manufacturing for others, packaging and advertising asbestos, and/or raw asbestos

27 fiber of various kinds and grades, and/or asbestos-containing products, and/or asbestos-

28 containing talc and/or other finished and unfinished asbestos-containing talcum powder

4

1  products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-

2  containing products, and/or products designed to cut, saw, or otherwise manipulate, and/or

3  equipment solely designed to be used with asbestos-containing products including, but not

4  limited to, those products identified in paragraph 3 above.  Said entities shall hereinafter

5  collectively be called "alternate entities."  Each of the herein named Defendants is liable for

6  the tortious conduct of each successor, successor-in-business, successor-in-product line or a

7  portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary,

8  whole or partial owner, or wholly or partially owned entity, or entity that it was a member of,

9  or funded, that researched, repaired, marketed, warranted, re-branded, manufactured for others

10  and advertised asbestos, and/or raw asbestos fiber of various kinds and grades, and/or

11  asbestos-containing products, and/or asbestos-containing talc and/or other finished and

12  unfinished asbestos-containing talcum powder products, and/or equipment requiring and/or

13  calling for the use of asbestos and/or asbestos-containing products, and/or products designed to

14  cut, saw, or otherwise manipulate, and/or equipment solely designed to be used with asbestos-

15  containing products.  The following Defendants, and each of them, are liable for the acts of

16  each and every "alternate entity", and each of them, in that there has been a virtual destruction

17  of Plaintiff's remedy against each such "alternate entity"; Defendants, and each of them, have

18  acquired the assets, product line, or a portion thereof, of each such "alternate entity";

19  Defendants, and each of them, have caused the destruction of Plaintiff's remedy against each

20  such "alternate entity"; each such Defendant has the ability to assume the risk-spreading role

21  of each such "alternate entity"; and that each such Defendant enjoys the goodwill originally

22  attached to each such "alternate entity".

23

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| BRENNTAG NORTH AMERICA, INC. | MINERAL PIGMENT SOLUTIONS, INC WHITTAKER, CLARK & DANIELS, INC. |
| BRENNTAG SPECIALTIES, INC. | MINERAL PIGMENT SOLUTIONS, INC. WHITTAKER, CLARK & DANIELS, INC. |
| CYPRUS AMAX MINERALS COMPANY | SIERRA TALC COMPANY UNITED TALC COMPANY |

5

**FIRST AMENDED COMPLAINT FOR PERSONAL INJURY – ASBESTOS**

METROPOLITAN TALC CO. INC.
CHARLES MATHIEU INC.

IMERYS TALC AMERICA, INC.        LUZENAC AMERICA, INC.
CYPRUS INDUSTRIAL MINERALS
COMPANY

JOHNSON & JOHNSON CONSUMER INC.   JOHNSON & JOHNSON

6.     At all times herein mentioned, Defendants, their "alternate entities", and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, renting, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising asbestos, and/or raw asbestos fiber of various kinds and grades, and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products, and/or products designed to cut, saw, or otherwise manipulate, and/or equipment solely designed to be used with asbestos-containing products (hereinafter "Defendants' Products").

7.     At all times herein mentioned, Defendants, their "alternate entities", and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, specified, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, failed to recall and/or retrofit, labeled, assembled, distributed, leased, bought, rented, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised Defendants' Products including, but not limited to, those products identified in paragraph 3 above, in that the Defendants' Products were unreasonably dangerous because they released respirable asbestos fibers which resulted in personal injuries to users, consumers, workers, bystanders, and others, including Plaintiff CAROLYN WEIRICK herein (hereinafter collectively called "exposed persons"). Defendants' Products were used at all times in a manner that was reasonably foreseeable to Defendants, their "alternate entities", and each of

6

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1  them, thereby rendering Defendants' Products unsafe and dangerous for use by "exposed
2  persons". Plaintiffs herein allege that CAROLYN WEIRICK was exposed to asbestos that
3  was caused to be released as a result of exposure to Defendants' Products including, but not
4  limited to, those products identified in paragraph 3 above, which were a substantial
5  contributing factor in the development of her malignant mesothelioma, and therefore
6  proximately caused Plaintiff CAROLYN WEIRICK's injuries.

7      8.      Defendants, their "alternate entities", and each of them, had a duty to exercise
8  reasonable care while engaging in the activities mentioned above and each Defendant breached
9  said duty of reasonable care in that Defendants, and each of them, failed to safely and
10  adequately design, manufacture and/or sell Defendants' Products; failed to test said products;
11  failed to recall and/or retrofit; failed to investigate the hazards of said products; failed to warn
12  "exposed persons", including Plaintiff CAROLYN WEIRICK and her Mother, of the health
13  hazards of using said products; failed to disclose the known or knowable dangers of using
14  Defendants' Products; failed to warn of the harmful exposures caused by use of Defendants'
15  Products; failed to recall and/or retrofit; failed to obtain suitable alternative materials to
16  asbestos when such alternatives were available; and as otherwise stated herein.

17      9.      The Defendants' Products were and are hazardous to the health and safety of
18  Plaintiff, and others in Plaintiff's position personally using and in close proximity to such
19  products, and since on or before 1930, the hazards and dangerous propensities of the
20  Defendants' Products were both known and knowable to the Defendants, their "alternate
21  entities", and each of them, through the use of medical and/or scientific data and other
22  knowledge available to Defendants, their "alternate entities", and each of them, at the time of
23  Defendants' manufacture, distribution, sale, research, study, fabrication, design, modification,
24  labeling, assembly, leasing, buying, offering for sale, supply, inspection, service, installation,
25  contracting for installation, repair, marketing, warranting, re-branding, re-manufacturing for
26  others, packaging and advertising of Defendants' Products, which clearly indicated the hazards
27  and dangerous propensities of asbestos presented a substantial danger to users, including
28  Plaintiff CAROLYN WEIRICK and her Mother, of Defendants' Products through the intended

7

**FIRST AMENDED COMPLAINT FOR PERSONAL INJURY – ASBESTOS**

1  and reasonably foreseeable use of those products.

2        10.   Defendants, their "alternate entities", and each of them, knew, or reasonably

3  should have known, that Defendants' Products were dangerous and were likely to be

4  dangerous when used in their intended and reasonably foreseeable manner.

5        11.   Defendants, their "alternate entities", and each of them, knew, or reasonably

6  should have known, that Defendants' Products would be personally used, installed, repaired,

7  maintained, overhauled, removed, sawed, chipped, hammered, mixed, scraped, sanded, swept,

8  broken, "ripped out," and/or used to cut, saw, grind, or otherwise manipulate products

9  containing asbestos, or otherwise disturbed in their ordinary, intended and foreseeable use,

10  resulting in the release of airborne hazardous and dangerous asbestos fibers, and that through

11  such activity, "exposed persons," including Plaintiff CAROLYN WEIRICK herein, would be

12  exposed to hazardous and dangerous asbestos fibers. Defendants, their "alternate entities", and

13  each of them, knew or reasonably should have known that users, such as Plaintiff CAROLYN

14  WEIRICK and her Mother, and others in Plaintiff's position using and in close proximity to

15  Defendants' Products, would not realize or know the danger. Defendants, their "alternate

16  entities", and each of them, negligently failed to adequately warn or instruct of the dangers of

17  Defendants' Products and failed to recall and/or retrofit the products. A reasonable designer,

18  manufacturer, distributor, seller, installer, buyer or supplier, under the same or similar

19  circumstances, would have warned of the dangers to avoid exposing others to a foreseeable

20  risk of harm. The negligent failure of Defendants, their "alternate entities", and each of them,

21  to warn was a substantial factor in causing harm to Plaintiff CAROLYN WEIRICK.

22        12.   Plaintiff CAROLYN WEIRICK and her Mother personally used, handled, or

23  were otherwise exposed to asbestos from Defendants' Products referred to herein in a manner

24  that was reasonably foreseeable to Defendants, and each of them. Plaintiff's exposure to

25  Defendants' Products occurred at various locations set forth in **Exhibit "A"**, which is attached

26  hereto and incorporated by reference herein.

27        13.   As a direct and proximate result of the conduct of the Defendants, their

28  "alternate entities", and each of them, as aforesaid, Plaintiff CAROLYN WEIRICK's exposure

1  to asbestos from her personal use and her Mother's use of Defendants' Products caused severe

2  and permanent injury to the Plaintiff, the nature of which, along with the date of Plaintiff's

3  diagnosis and the date she learned such injuries were attributable to exposure to Defendants'

4  Products, are set forth in **Exhibit "B"**, which is attached hereto and incorporated by reference

5  herein.  Plaintiff is informed and believes, and thereon alleges, that progressive lung disease,

6  cancer and other serious diseases are caused by inhalation of asbestos fibers without

7  perceptible trauma and that said disease results from exposure to Defendants' Products over a

8  period of time.

9        14.    Plaintiff CAROLYN WEIRICK suffers from malignant pleural mesothelioma

10  caused by exposure to asbestos from Defendants' Products and/or from the use of Defendants'

11  Products, including those products identified in paragraph 3 above.  Plaintiff CAROLYN

12  WEIRICK was not aware at the time of exposure that Defendants' Products presented any risk

13  of injury and/or disease.

14        15.    As a direct and proximate result of the aforesaid conduct of Defendants, their

15  "alternate entities", and each of them, Plaintiff CAROLYN WEIRICK has suffered and will

16  continue to suffer permanent injuries and future injuries to her person, body and health,

17  including, but not limited to, pain, discomfort, loss of weight, loss of appetite, fatigue,

18  somnolence, lethargy, dyspnea, dysphagia, and other physical symptoms, and the mental and

19  emotional distress attendant thereto, as Plaintiff's malignant mesothelioma progresses, all to

20  her general damage in a sum in excess of the jurisdictional limits of a limited civil case.

21        16.    As a direct and proximate result of the aforesaid conduct of the Defendants, their

22  "alternate entities", and each of them, Plaintiff CAROLYN WEIRICK has incurred, is

23  presently incurring, and will incur in the future, liability for physicians, surgeons, nurses,

24  hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact

25  amount thereof being presently unknown to Plaintiff, subject to proof at trial.

26        17.    As a further direct and proximate result of the said conduct of the Defendants,

27  their "alternate entities", and each of them, Plaintiff has incurred, and will incur, loss of

28  income, wages, profits and commissions, a diminishment of earning potential, and other

1  pecuniary losses, the true and exact amount thereof being presently unknown to Plaintiff,
2  subject to proof at trial.

3      18.    Plaintiffs further allege that Defendants, their "alternate entities", and each of
4  them, also engaged in the following wrongful acts:

5      (a)    Defendants, their "alternate entities", and each of them, suppressed from all
6  consumers, including Plaintiff CAROLYN WEIRICK and her Mother, medical and scientific
7  information concerning the health hazards associated with inhalation of asbestos, including the
8  substantial risk of injury or death therefrom.  Although Defendants, and each of them, knew of
9  the substantial risks associated with exposure to asbestos, they willfully and knowingly
10 concealed such information from the users of Defendants' Products in conscious disregard of
11 the rights, safety and welfare of "exposed persons", including Plaintiff CAROLYN WEIRICK;

12     (b)    Defendants, their "alternate entities", and each of them, belonged to, participated
13 in, and financially supported industry organizations including, but not limited to, the Cosmetic
14 Toiletry and Fragrance Association (now Personal Care Products Council), the Gypsum
15 Association, Asbestos Information Association, Industrial Hygiene Foundation and others,
16 which, for and on behalf of Defendants, their "alternate entities", and each of them, actively
17 promoted the suppression of information about the dangers of asbestos to users of the
18 aforementioned Defendants' Products, thereby misleading Plaintiff CAROLYN WEIRICK
19 and her Mother as to the safety of their products.  Through their participation and association
20 with such industry organizations, Defendants, and each of them, knowingly and deliberately
21 concealed and suppressed the true information regarding asbestos and its dangers, and
22 propagated misinformation intended to instill in users of Defendants' Products a false security
23 about the safety of their products.  The Dust Control Committee, which changed its name to
24 the Air Hygiene Committee of the Asbestos Textile Institute, was specifically enlisted to study
25 the subject of dust control.  Discussions in this committee were held many times regarding the
26 dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and
27 such information was suppressed from public dissemination from 1946 to a date unknown to
28 Plaintiff CAROLYN WEIRICK at this time;

10

**FIRST AMENDED COMPLAINT FOR PERSONAL INJURY – ASBESTOS**

(c) Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities", and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "alternate entities", and each of them, herein. Between 1942 and 1950, the Defendants, their "alternate entities", and each of them, failed to provide this information to consumers;

(d) Defendants, their "alternate entities", and each of them, failed to warn Plaintiff CAROLYN WEIRICK, her Mother, and others of the nature of Defendants' Products which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "alternate entities", and each of them, possessed knowledge and were under a duty to disclose that said products were dangerous and a threat to the health of persons coming into contact therewith;

(e) Defendants, their "alternate entities", and each of them, failed to provide Plaintiff CAROLYN WEIRICK or her Mother with information concerning adequate protective masks and other equipment devised to be used when applying, mixing, sawing, cutting, installing and sanding Defendants' Products, and/or from the use of Defendants' Products, their "alternate entities", and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Plaintiff CAROLYN WEIRICK and others when personally using, applying, installing and exposed to Defendants' Products;

(f) Defendants, their "alternate entities", and each of them, knew and failed to disclose that Plaintiff CAROLYN WEIRICK and anyone similarly situated, upon inhalation of asbestos would, in time, have a substantial risk of developing irreversible conditions of pneumoconiosis, asbestosis, mesothelioma and/or cancer;

(g) Defendants, their "alternate entities", and each of them, failed to provide information of the true nature of the hazards of asbestos-containing materials and that

11

1   exposure to these materials would cause pathological effects without noticeable trauma to the

2   public, including buyers, users, and physicians employed by Plaintiff CAROLYN WEIRICK

3   so that said physicians could not examine, diagnose, and treat Plaintiff and others who were

4   exposed to asbestos, despite the fact that Defendants, their "alternate entities", and each of

5   them, were under a duty to so inform and said failure was misleading.

6       19.    Defendants, their "alternate entities", and each of them, and their officers,

7   directors, and managing agents participated in, authorized, expressly and impliedly ratified,

8   and had full knowledge of, or should have known of, each of the acts set forth herein.

9   Defendants, their "alternate entities", and each of them, are liable for the oppressive and

10  malicious acts of their "alternate entities", and each of them, and each Defendant's officers,

11  directors, and managing agents participated in, authorized, expressly and impliedly ratified,

12  and had full knowledge of, or should have known of, the acts of each of their "alternate

13  entities" as set forth herein.

14      20.    The herein-described conduct of said Defendants, their "alternate entities", and

15  each of them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard

16  and indifference to the safety and health of "exposed persons," including Plaintiff CAROLYN

17  WEIRICK, in that Defendants, and each of them, continued to manufacture, market and/or sell

18  Defendants' Products known to cause asbestos to be released and to cause severe, permanent

19  injuries and death, despite possessing knowledge of the substantial hazards posed by use of

20  Defendants' Products, in order to continue to profit financially therefrom. Defendants, their

21  "alternate entities", and each of them, engaged in such conduct so despicable, contemptible,

22  base, vile, miserable, wretched and loathsome as to be looked down upon and despised by

23  ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil

24  Code section 3294. Plaintiff, for the sake of example and by way of punishing Defendants,

25  seeks punitive damages according to proof.

26      21.    Defendants, and each of them, engaged in conduct which was intended by

27  Defendants, and each of them, to cause injury to the Plaintiff, and despicable conduct which

28  was carried on by the Defendants with a willful and conscious disregard of the rights or safety

of others, including Plaintiff CAROLYN WEIRICK.

22.   Defendants, and each of them, engaged in the despicable conduct described herein that subjected persons, including Plaintiff CAROLYN WEIRICK, to cruel and unjust hardship in the form of severe, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those persons' rights.

23.   As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities", and each of them, Plaintiff CAROLYN WEIRICK sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities", and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION
### (Strict Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFF COMPLAINS OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

24.   Plaintiffs incorporate herein by reference, as though fully set forth therein, each and every one of the general allegations and the allegations contained in the First Cause of Action herein.

25.   Defendants, their "alternate entities", and each of them, sold the aforementioned Defendants' Products, which were defective in that they failed to adequately warn or instruct of the known and knowable dangers and risks of the ordinary, intended, and foreseeable use of said products, which dangers and risks would not have been, and were not, recognized by ordinary consumers of Defendants' Products, including Plaintiff CAROLYN WEIRICK and her Mother, and the lack of sufficient instructions and/or warnings was a substantial factor in causing harm to Plaintiff CAROLYN WEIRICK and others in Plaintiff's position personally using, working with, and in close proximity to Defendants' Products.

26.   Defendants' Products were defective and unsafe for their intended purpose and foreseeable use in that when used, handled, installed, repaired, maintained, overhauled, removed, sawed, chipped, hammered, mixed, scraped, sanded, swept, broken, "ripped out,"

13

1   and/or used to cut, saw, grind, or otherwise manipulate products containing asbestos, or

2   otherwise disturbed, said products would result in the release, and therefore inhalation of,

3   hazardous and dangerous asbestos fibers by exposed persons, including Plaintiff CAROLYN

4   WEIRICK. The defect existed in all of Defendants' Products when they left the possession of

5   the Defendants, their "alternate entities", and each of them. At the time Defendants' Products

6   were used by Plaintiff CAROLYN WEIRICK and her Mother, and others in Plaintiff's

7   position personally using, working with, and in close proximity to said products, the products

8   were substantially the same as when they left the possession of the Defendants, their "alternate

9   entities", and each of them, and/or any changes made to said products after they left the

10   possession of Defendants, their "alternate entities", and each of them, were reasonably

11   foreseeable to Defendants, their "alternate entities", and each of them. Defendants' Products

12   were used by Plaintiff CAROLYN WEIRICK and her Mother, and others in Plaintiff's

13   position personally using, working with, and in close proximity to said products in a way that

14   was reasonably foreseeable to Defendants, and each of them. The defect in Defendants'

15   Products was a substantial factor in causing harm and personal injuries to Plaintiff CAROLYN

16   WEIRICK, including malignant mesothelioma, while being used in a reasonably foreseeable

17   manner, thereby rendering Defendants' Products defective, unsafe, and unreasonably

18   dangerous for their ordinary and intended use.

19         27.   As a direct and proximate result of the actions and conduct outlined herein,

20   Defendants' Products were defective in that they failed to perform as safely as an ordinary

21   consumer would have expected in that Defendants' Products, and each of them, caused

22   respirable asbestos fibers to be released from Defendants' Products during their ordinary and

23   intended use, and such hazardous exposures lacked any perceptible qualities to the human

24   body, yet they cause severe and fatal diseases, including asbestosis, lung cancer, mesothelioma

25   and other cancers in humans. Plaintiffs further allege that "exposed persons", including

26   Plaintiff CAROLYN WEIRICK, were unaware of the harmful effects of asbestos and further

27   unaware of the harmful exposures to Defendants' Products when such exposures occurred, and

28   thus the failure of Defendants' Products to perform as safely as Plaintiff CAROLYN

1    WEIRICK had reason to expect was a substantial factor in causing her injuries. Moreover,

2    Defendants' Products were also defective in their design under the "risk/benefit test" of design

3    defect because the risks of said products outweighed their benefits.

4          28.     As a direct and proximate result of the actions and conduct outlined herein,

5    Plaintiff CAROLYN WEIRICK has suffered the injuries and damages alleged herein.

6          29.     Plaintiffs further allege that Defendants, their "alternate entities", and each of

7    them, also engaged in the following wrongful acts:

8          (a)     Defendants, their "alternate entities", and each of them, suppressed from all

9    consumers, including Plaintiff CAROLYN WEIRICK and her Mother, medical and scientific

10   information concerning the health hazards associated with inhalation of asbestos, including the

11   substantial risk of injury or death therefrom. Although Defendants, and each of them, knew of

12   the substantial risks associated with exposure to asbestos, they willfully and knowingly

13   concealed such information from the users of Defendants' Products in conscious disregard of

14   the rights, safety and welfare of "exposed persons", including Plaintiff CAROLYN WEIRICK;

15         (b)     Defendants, their "alternate entities", and each of them, belonged to, participated

16   in, and financially supported industry organizations including, but not limited to, the Cosmetic

17   Toiletry and Fragrance Association (now Personal Care Products Council), the Gypsum

18   Association, Asbestos Information Association, Industrial Hygiene Foundation and others,

19   which, for and on behalf of Defendants, their "alternate entities", and each of them, actively

20   promoted the suppression of information about the dangers of asbestos to users and bystanders

21   of the aforementioned Defendants' Products, thereby misleading Plaintiff CAROLYN

22   WEIRICK and her Mother as to the safety of said products. Through their participation and

23   association with such industry organizations, Defendants, and each of them, knowingly and

24   deliberately concealed and suppressed the true information regarding asbestos and its dangers,

25   and propagated misinformation intended to instill in users of and bystanders to Defendants'

26   Products a false security about the safety of said products. The Dust Control Committee,

27   which changed its name to the Air Hygiene Committee of the Asbestos Textile Institute, was

28   specifically enlisted to study the subject of dust control. Discussions in this committee were

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1    held many times regarding the dangers inherent in asbestos and the dangers, which arise from

2    the lack of control of dust, and such information was suppressed from public dissemination

3    from 1946 to a date unknown to Plaintiff CAROLYN WEIRICK at this time;

4         (c)    Commencing in 1930 with the study of mine and mill workers at Asbestos and

5    Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan

6    plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities", and

7    each of them, knew and possessed medical and scientific information of the connection

8    between the inhalation of asbestos fibers and asbestosis, which information was disseminated

9    through the Asbestos Textile Institute and other industry organizations to all other Defendants,

10   their "alternate entities", and each of them, herein.  Between 1942 and 1950, the Defendants,

11   their "alternate entities", and each of them, failed to provide this information to consumers;

12        (d)    Defendants, their "alternate entities", and each of them, failed to warn Plaintiff

13   CAROLYN WEIRICK, her Mother, and others of the nature of Defendants' Products which

14   were dangerous when breathed and which could cause pathological effects without noticeable

15   trauma, despite the fact that Defendants, their "alternate entities", and each of them, possessed

16   knowledge and were under a duty to disclose that said products were dangerous and a threat to

17   the health of persons coming into contact therewith;

18        (e)    Defendants, their "alternate entities", and each of them, failed to provide

19   Plaintiff CAROLYN WEIRICK and her Mother with information concerning adequate

20   protective masks and other equipment devised to be used when personally using, applying,

21   mixing, sawing, cutting, installing and sanding Defendants' Products, their "alternate entities",

22   and each of them, despite knowing that such protective measures were necessary, and that they

23   were under a duty to disclose that Defendants' Products were dangerous and would result in

24   injury to Plaintiff CAROLYN WEIRICK and others personally using, applying and installing

25   Defendants' Products;

26        (f)    Defendants, their "alternate entities", and each of them, knew and failed to

27   disclose that Plaintiff CAROLYN WEIRICK and anyone similarly situated, upon inhalation of

28   asbestos would, in time, have a substantial risk of developing irreversible conditions of

16

**FIRST AMENDED COMPLAINT FOR PERSONAL INJURY – ASBESTOS**

1  pneumoconiosis, asbestosis, mesothelioma and/or cancer;

2      (g)    Defendants, their "alternate entities", and each of them, failed to provide

3  information of the true nature of the hazards Defendants' Products and that exposure to said

4  products would cause pathological effects without noticeable trauma to the public, including

5  buyers, users, and physicians employed by Plaintiff CAROLYN WEIRICK so that said

6  physicians could not examine, diagnose, and treat Plaintiff and others who were exposed to

7  asbestos, despite the fact that Defendants, their "alternate entities", and each of them, were

8  under a duty to so inform and said failure was misleading.

9      30.    Defendants, their "alternate entities", and each of them, and their officers,

10 directors, and managing agents participated in, authorized, expressly and impliedly ratified,

11 and had full knowledge of, or should have known of, each of the acts set forth herein.

12 Defendants, their "alternate entities", and each of them, are liable for the oppressive and

13 malicious acts of their "alternate entities", and each of them, and each Defendant's officers,

14 directors, and managing agents participated in, authorized, expressly and impliedly ratified,

15 and had full knowledge of, or should have known of, the acts of each of their "alternate

16 entities" as set forth herein.

17     31.    The herein-described conduct of Defendants, their "alternate entities", and each

18 of them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard and

19 indifference to the safety and health of "exposed persons," including Plaintiff CAROLYN

20 WEIRICK, in that Defendants, and each of them, continued to manufacture, market and/or sell

21 dangerous products known to cause severe, permanent injuries and death, despite possessing

22 knowledge of the substantial hazards posed by use of Defendants' Products, in order to

23 continue to profit financially therefrom. Defendants, their "alternate entities", and each of

24 them, engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched

25 and loathsome as to be looked down upon and despised by ordinary people and justifies an

26 award of punitive and exemplary damages pursuant to Civil Code section 3294. Plaintiff, for

27 the sake of example and by way of punishing said Defendants, seeks punitive damages

28 according to proof.

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY – ASBESTOS

32.     Defendants, and each of them, engaged in conduct which was intended by Defendants, and each of them, to cause injury to the Plaintiff, and despicable conduct which was carried on by the Defendants with a willful and conscious disregard of the rights or safety of others, including Plaintiff CAROLYN WEIRICK.

33.     Defendants, and each of them, engaged in the despicable conduct described herein that subjected persons, including Plaintiff CAROLYN WEIRICK, to cruel and unjust hardship in the form of severe, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those persons' rights.

34.     As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities", and each of them, Plaintiff CAROLYN WEIRICK sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiff prays for judgment against Defendants, and their "alternate entities", and each of them, as hereinafter set forth.

## THIRD CAUSE OF ACTION

### (Loss of Consortium)

AS AND FOR A FURTHER THIRD, SEPARATE, AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF ELVIRA GRACIELA ESCUDERO LORA COMPLAINS OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

35.     Plaintiff ELVIRA GRACIELA ESCUDERO LORA incorporates by reference each and every allegation contained in the general allegations and in the First and Second Causes of Action herein.

36.     Plaintiffs CAROLYN WEIRICK and ELVIRA GRACIELA ESCUDERO LORA were married on February 3, 2014.

37.     Prior to Plaintiff CAROLYN WEIRICK'S injuries as alleged, she was able to, and did, perform duties as a spouse.  Subsequent to the injuries and as a proximate result thereof, Plaintiff CAROLYN WEIRICK has been unable to perform the necessary duties as a spouse and the work and services usually performed in the care, maintenance, and management of the family home, and she will be unable to perform such work, service and

18

**FIRST AMENDED COMPLAINT FOR PERSONAL INJURY – ASBESTOS**

1   duties in the future.  As a proximate result thereof, ELVIRA GRACIELA ESCUDERO LORA

2   has been permanently deprived and will be deprived of the consortium of her spouse, including

3   the performance of duties, all to her damages, in an amount presently unknown but which will

4   be proved at the time of trial.

5          38.    Plaintiff ELVIRA GRACIELA ESCUDERO LORA'S discovery of this cause of

6   her loss of consortium, as herein alleged, first occurred within one year of the date this

7   Complaint was filed.

8          39.    As a direct and proximate result of the acts of Defendants, their "alternate

9   entities", and each of them, and the severe injuries caused thereby to Plaintiff CAROLYN

10  WEIRICK as set forth in this Complaint, Plaintiff ELVIRA GRACIELA ESCUDERO LORA

11  has suffered, and for a long period of time will continue to suffer, loss of consortium,

12  including, but not limited to, loss of services, marital relations, society, comfort,

13  companionship, love and affection of said spouse, and has suffered severe mental and

14  emotional distress and general nervousness as a result thereof.

15         40.    WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate

16  entities", and each of them, in an amount to be proved at trial in each individual case, as

17  follows:

18         Plaintiff CAROLYN WEIRICK:

19         1.     For Plaintiff's general damages according to proof;

20         2.     For Plaintiff's loss of income, wages, and earning potential according to

21                proof;

22         3.     For Plaintiff's medical and related expenses according to proof;

23         Plaintiff ELVIRA GRACIELA ESCUDERO LORA:

24         4.     For Plaintiff's damages for loss of consortium and/or society according to

25                proof;

26         Plaintiffs CAROLYN WEIRICK AND ELVIRA GRACIELA ESCUDERO

27  LORA:

28         5.     For Plaintiffs' cost of suit herein;

**19**

**FIRST AMENDED COMPLAINT FOR PERSONAL INJURY – ASBESTOS**

6.   For exemplary or punitive damages according to proof;

7.   For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. section 998, C.C.P. section 1032, and related provisions of law.

DATED:  July 13, 2017          **SIMON GREENSTONE PANATIER BARTLETT, P. C.**

By: _____

Jennifer L. Bartlett
Leah Kagan
Attorneys for Plaintiffs

20

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all issues so triable.

DATED:  July 13, 2017

SIMON GREENSTONE PANATIER BARTLETT, P. C.

By: _____

Jennifer L. Bartlett
Leah Kagan
Attorneys for Plaintiffs

21

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY -- ASBESTOS

1

**EXHIBIT "A"**

2    Plaintiff CAROLYN WEIRICK's exposure to asbestos and asbestos-containing products

3  occurred at various locations including, but not limited to:

4  <u>Location of Exposure</u>          <u>Job Title</u>                          <u>Exposure Date(s)</u>

5  Various Residential Sites        Personal use of talcum powder products;   Approximately
   including, but not limited to,   Mother – Leilani Weirick – use of talcum   1958 – 2000's
6  Palo Alto, California;           powder products on herself and Plaintiff
   Riverside, California;
7  Altadena, California;
   Pasadena, California; San
8  Marino, California; San
   Francisco, California;
9  Montrose, California;
   Washington, D.C.; Portland,
10 Oregon; San Gabriel,
   California

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### <u>EXHIBIT "B"</u>

Plaintiff CAROLYN WEIRICK's exposure to Defendants' Products caused severe and permanent injury to Plaintiff CAROLYN WEIRICK including, but not limited to, mesothelioma.  Plaintiff was diagnosed with mesothelioma on or about February 21, 2017.

23

**FIRST AMENDED COMPLAINT FOR PERSONAL INJURY – ASBESTOS**

PROOF OF SERVICE

STATE OF CALIFORNIA           )
                              )
COUNTY OF LOS ANGELES         )

     I am employed in the County of Los Angeles, State of California.  I am over eighteen years of age and not a party to the within action; my business address is 3780 Kilroy Airport Way Suite 540, Long Beach, California.  I am employed in Los Angeles County, California.

     On the date set forth below, I served the foregoing document(s) described as:

**FIRST AMENDED COMPLAINT FOR
PERSONAL INJURY– ASBESTOS (NEGLIGENCE; STRICT LIABILITY and LOSS
OF CONSORTIUM)**

On all interested parties in this action by placing a true copy thereof enclosed in a sealed envelope(s) addressed and sent as follows:

**PER FILE & SERVEXPRESS SERVICE LIST**

[XX]  **BY E-SERVICE:**   I caused such document to be transmitted by electronic service via Lexis Nexis for the same day delivery to the offices of the addressee(s).

[]    **BY FACSIMILE:**   I caused a courtesy copy to be transmitted by facsimile to the facsimile number of the offices of the addressee(s) as indicated above and below (see service list).

[ ]   **BY FEDERAL EXPRESS**:     I caused such envelope to be transmitted by federal express for next day delivery (by 10:30 a.m.) to the offices of the addressee(s).

     I declare under penalty of perjury, under the laws of the State of California that the above is true and correct.

     Executed this 13TH day of July, 2017 at Long Beach, California.


s/*Jenna Sanchez*
Jenna Sanchez

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| LEAH C. KAGAN                                SBN: 283295<br>SIMON GREENSTONE PANATIER BARTLETT<br>3780 Kilroy Airport Way, Ste. 540, Long Beach, CA 90806<br>TELEPHONE NO.: 562-590-3400          FAX NO.: 562-590-3412<br>ATTORNEY FOR *(Name):* CAROLYN WEIRICK | **CONFORMED COPY**<br>**ORIGINAL FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>APR. 0 4 2017<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By: Morietta Robinson, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 NORTH HILL STREET
MAILING ADDRESS: 111 NORTH HILL STREET
CITY AND ZIP CODE: LOS ANGELES, 90012
BRANCH NAME: STANLEY MOSK COURTHOUSE

CASE NAME: CAROLYN WEIRICK vs. BRENNTAG NORTH AMERICA, INC., et al

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited    [ ] Limited<br>(Amount          (Amount<br>demanded         demanded is<br>exceeds $25,000) $25,000 or less) | [ ] Counter   [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | BC 6 5 6 4 2 5 |
| | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [X] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation**
(Cal. Rules of Court, rules 3.400–3.403)
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [X] Large number of separately represented parties     d. [ ] Large number of witnesses
   b. [X] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
         issues that will be time-consuming to resolve              in other counties, states, or countries, or in a federal court
   c. [X] Substantial amount of documentary evidence         f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[X] monetary   b.[ ] nonmonetary; declaratory or injunctive relief   c.[X] punitive
4. Number of causes of action *(specify):* TWO (2)
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: APRIL 4, 2017

LEAH C. KAGAN
_____                              ▶ _____
        (TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov<br>Westlaw Doc & Form Builder |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, only parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment (*non-domestic relations*)
Sister State Judgment
Administrative Agency Award (*not unpaid taxes*)
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
Declaratory Relief Only
Injunctive Relief Only (*non-harassment*)
Mechanics Lien
Other Commercial Complaint Case (*non-tort/non-complex*)
Other Civil Complaint (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

JUN 09 1993

_T. Aurini_
BY T. ACUNA DEP

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

In re Los Angeles Asbestos        )    No. C 700000
Litigation - General Orders       )
                                  )    FIRST AMENDED
                                  )    GENERAL ORDER NO. 1
_____  )

The Court, having conducted a hearing on its own motion,
issues the orders as hereafter set forth.

IT IS HEREBY ORDERED that all actions currently pending and
hereafter filed in the above-entitled Court alleging personal
injury or wrongful death due to exposure to an asbestos-
containing product (hereafter "Los Angeles Asbestos Litigation")
are determined to be complex litigation within the meaning of
California Rules of Court, Appendix, Division 1, Standards of
Judicial Administration Recommended by the Judicial Council
(hereafter "Standards of Judicial Administration"), Section 19.

IT IS FURTHER ORDERED that all Los Angeles Asbestos
Litigation actions shall continue to be filed in the Central
District of the above-entitled Court both before and after the
distribution of such cases into the Central District's
Independent Calendaring ("I/C") courts. The certificate of
assignment for each Los Angeles Asbestos Litigation case shall

-1-

1    contain the following language:   "Filed in the Central District

2    pursuant to First Amended General Order No. 1 contained in the

3    general order file, File No. C 700000."

4    Dated:   _6-9-95_

5.

6                                            BRUCE E. MITCHELL
                                             Commissioner of the Superior Court
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

| SHORT TITLE: CAROLYN WEIRICK vs. BRENNTAG NORTH AMERICA, INC., et al. | CASE NUMBER BC 6 5 6 4 2 5 |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 1, 11 |
| | | ☒ A7221 Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

| SHORT TITLE: CAROLYN WEIRICK vs. BRENNTAG NORTH AMERICA, INC., et al. | CASE NUMBER |
|---|---|

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|
| **Non-Personal Injury/ Property Damage/Wrongful Death Tort** | | |
| Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | | |
| Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | | |
| Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | | |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | ☐ A6032  Quiet Title | 2, 6 |
| | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | | |
| Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

| SHORT TITLE: CAROLYN WEIRICK vs. BRENNTAG NORTH AMERICA, INC., et al. | CASE NUMBER |
|---|---|

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|
| **Judicial Review** | | |
| Asset Forfeiture (05) | ☐  A6108  Asset Forfeiture Case | 2, 3, 6 |
| Petition re Arbitration (11) | ☐  A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| Writ of Mandate (02) | ☐  A6151  Writ - Administrative Mandamus<br>☐  A6152  Writ - Mandamus on Limited Court Case Matter<br>☐  A6153  Writ - Other Limited Court Case Review | 2, 8<br>2<br>2 |
| Other Judicial Review (39) | ☐  A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | | |
| Antitrust/Trade Regulation (03) | ☐  A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| Construction Defect (10) | ☐  A6007  Construction Defect | 1, 2, 3 |
| Claims Involving Mass Tort (40) | ☐  A6006  Claims Involving Mass Tort | 1, 2, 8 |
| Securities Litigation (28) | ☐  A6035  Securities Litigation Case | 1, 2, 8 |
| Toxic Tort<br>Environmental (30) | ☐  A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| Insurance Coverage Claims from Complex Case (41) | ☐  A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | | |
| Enforcement<br>of Judgment (20) | ☐  A6141  Sister State Judgment<br>☐  A6160  Abstract of Judgment<br>☐  A6107  Confession of Judgment (non-domestic relations)<br>☐  A6140  Administrative Agency Award (not unpaid taxes)<br>☐  A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐  A6112  Other Enforcement of Judgment Case | 2, 5, 11<br>2, 6<br>2, 9<br>2, 8<br>2, 8<br>2, 8, 9 |
| **Miscellaneous Civil Complaints** | | |
| RICO (27) | ☐  A6033  Racketeering (RICO) Case | 1, 2, 8 |
| Other Complaints<br>(Not Specified Above) (42) | ☐  A6030  Declaratory Relief Only<br>☐  A6040  Injunctive Relief Only (not domestic/harassment)<br>☐  A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐  A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8<br>2, 8<br>1, 2, 8<br>1, 2, 8 |
| **Miscellaneous Civil Petitions** | | |
| Partnership Corporation Governance (21) | ☐  A6113  Partnership and Corporate Governance Case | 2, 8 |
| Other Petitions (Not Specified Above) (43) | ☐  A6121  Civil Harassment<br>☐  A6123  Workplace Harassment<br>☐  A6124  Elder/Dependent Adult Abuse Case<br>☐  A6190  Election Contest<br>☐  A6110  Petition for Change of Name/Change of Gender<br>☐  A6170  Petition for Relief from Late Claim Law<br>☐  A6100  Other Civil Petition | 2, 3, 9<br>2, 3, 9<br>2, 3, 9<br>2<br>2, 7<br>2, 3, 8<br>2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

| SHORT TITLE: CAROLYN WEIRICK vs. BRENNTAG NORTH AMERICA, INC., et al. | CASE NUMBER |
| --- | --- |

**Step 4:** **Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:  ☒ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7.  ☐ 8. ☐  9. ☐ 10. ☒ 11. | ADDRESS: 818 W. 7TH STREET |
| --- | --- |
| CITY: LOS ANGELES | STATE: CA | ZIP CODE: 90017 | |

**Step 5:** **Certification of Assignment:** I certify that this case is properly filed in the <u>CENTRAL</u> District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq. and Local Rule 2.3(a)(1)(E)].

Dated: <u>APRIL 4, 2017</u>

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE (NON-CLASS ACTION)**
Case Number _____ **BC 6 5 6 4 2 5**

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT
Your case is assigned for all purposes to the judge indicated below. There is more information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM | |
|---|---|---|---|---|---|---|
| Hon. Debre K. Weintraub | 1 | 534 | Hon. Elizabeth Allen White | 48 | 506 | |
| Hon. Barbara A. Meiers | 12 | 636 | Hon. Deirdre Hill | 49 | 509 | |
| Hon. Terry A. Green | 14 | 300 | Hon. Teresa A. Beaudet | 50 | 508 | |
| Hon. Richard Fruin | 15 | 307 | Hon. Michael J. Raphael | 51 | 511 | |
| Hon. Rita Miller | 16 | 306 | Hon. Susan Bryant-Deason | 52 | 510 | |
| Hon. Richard E. Rico | 17 | 309 | Hon. Howard L. Halm | 53 | 513 | |
| Hon. Stephanie Bowick | 19 | 311 | Hon. Ernest M. Hiroshige | 54 | 512 | |
| Hon. Dalila Corral Lyons | 20 | 310 | Hon. Malcolm H. Mackey | 55 | 515 | |
| Hon. Robert L. Hess | 24 | 314 | Hon. Michael Johnson | 56 | 514 | |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. John P. Doyle | 58 | 516 | |
| Hon. Barbara Scheper | 30 | 400 | Hon. Gregory Keosian | 61 | 732 | |
| Hon. Samantha Jessner | 31 | 407 | Hon. Michael L. Stern | 62 | 600 | |
| Hon. Daniel S. Murphy | 32 | 406 | Hon. Mark Mooney | 68 | 617 | |
| Hon. Michael P. Linfield | 34 | 408 | Hon. William F. Fahey | 69 | 621 | |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Monica Bachner | 71 | 729 | |
| Hon. Marc Marmaro | 37 | 413 | Hon. Ruth Ann Kwan | 72 | 731 | |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. Rafael Ongkeko | 73 | 733 | |
| Hon. Elizabeth Feffer | 39 | 415 | Hon. Teresa Sanchez-Gordon | 74 | 735 | |
| Hon. David Sotelo | 40 | 414 | Hon. Gail Ruderman Feuer | 78 | 730 | |
| Hon. Holly E. Kendig | 42 | 416 | | | | |
| Hon. Mel Red Recana | 45 | 529 | Hon. Steven J. Kleifield | 324 | CCW | X |
| Hon. Frederick C. Shaller | 46 | 500 | *Provisionally Complex Non-class Action Cases | | | |
| Hon. Randolph Hammock | 47 | 507 | Assignment is Pending Complex Determination | 308 | CCW | X |

**\*Complex**

All non-class action cases designated as provisionally complex are forwarded to the Supervising Judge of the Complex Litigation Program located in the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005), for complex/non-complex determination pursuant to Local Rule 3.3(k). This procedure is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____ SHERRI R. CARTER, Executive Officer/Clerk

By _____, Deputy Clerk

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

### APPLICATION

The Chapter Three Rules were effective January 1, 1994. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

**This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.**

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

**STIPULATION – DISCOVERY RESOLUTION**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

    iii.  Be filed within two (2) court days of receipt of the Request; and

    iv.  Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| **TELEPHONE NO.:** **E-MAIL ADDRESS** (Optional): **ATTORNEY FOR** (Name): | FAX NO. (Optional): | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**COURTHOUSE ADDRESS:**

**PLAINTIFF:**

**DEFENDANT:**

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".
   <br>(INSERT DATE)     (INSERT DATE)

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____   ➤ _____
(TYPE OR PRINT NAME)   (ATTORNEY FOR PLAINTIFF)

Date:

_____   ➤ _____
(TYPE OR PRINT NAME)   (ATTORNEY FOR DEFENDANT)

Date:

_____   ➤ _____
(TYPE OR PRINT NAME)   (ATTORNEY FOR DEFENDANT)

Date:

_____   ➤ _____
(TYPE OR PRINT NAME)   (ATTORNEY FOR DEFENDANT)

Date:

_____   ➤ _____
(TYPE OR PRINT NAME)   (ATTORNEY FOR _____)

Date:

_____   ➤ _____
(TYPE OR PRINT NAME)   (ATTORNEY FOR _____)

_____   ➤ _____
(TYPE OR PRINT NAME)   (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):          FAX NO. (Optional):
ATTORNEY FOR (Name):

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:
_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date:
_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:
_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:
_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:
_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____ )

Date:
_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____ )

Date:
_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____ )

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

# Superior Court of California
# County of Los Angeles



# ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKET

The person who files a civil lawsuit (plaintiff) must include the ADR information Packet with the complaint when serving the defendant. Cross-complainants must serve the ADR Information Packet on any new parties named to the action together with the cross-complaint.

There are a number of ways to resolve civil disputes without having to sue someone. These alternatives to a lawsuit are known as alternative dispute resolution (ADR).

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediations, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help resolve disputes without having to go to court.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

**Advantages of ADR**

- Often faster than going to trial
- Often less expensive, saving the litigants court costs, attorney's fees and expert fees.
- May permit more participation, allowing parties to have more control over the outcome.
- Allows for flexibility in choice of ADR processes and resolution of the dispute.
- Fosters cooperation by allowing parties to work together with the neutral to resolve the dispute and mutually agree to remedy.
- There are fewer, if any, court appearances. Because ADR can be faster and save money, it can reduce stress.

**Disadvantages of ADR - ADR may not be suitable for every dispute.**

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.
- ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.
- The neutral may charge a fee for his or her services.
- If the dispute is not resolved through ADR, the parties may then have to face the usual and traditional costs of trial, such as attorney's fees and expert fees.

**The Most Common Types of ADR**

- **Mediation**

  In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the parties, rather than the mediator, decide how the dispute is to be resolved.

  - **Mediation is particularly effective** when the parties have a continuing relationship, like neighbors or business people. Mediation is also very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to express their feelings and find out how the other sees things.

  - **Mediation may not be effective** when one party is unwilling to cooperate or compromise or when one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

- **Arbitration**

  In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is typically less formal than a trial, and the rules of evidence may be relaxed. Arbitration may be either "binding" or "non-binding." Binding arbitration means the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Non-binding arbitration means that the parties are free to request a trial if they reject the arbitrator's decision.

  Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

- **Mandatory Settlement Conference (MSC)**

  **Settlement Conferences are appropriate in any case where settlement is an option.** Mandatory Settlement Conferences are ordered by the Court and are often held near the date a case is set for trial. The parties and their attorneys meet with a judge who devotes his or her time exclusively to preside over the MSC. The judge does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.

  The Los Angeles Superior Court Mandatory Settlement Conference (MSC) program is free of charge and staffed by experienced sitting civil judges who devote their time exclusively to presiding over MSCs. The judges participating in the judicial MSC program and their locations are identified in the List of Settlement Officers found on the Los Angeles Superior Court website at http://www.lacourt.org/. This program is available in general jurisdiction cases with represented parties from independent calendar (IC) and Central Civil West (CCW) courtrooms. In addition, on an ad hoc basis, personal injury cases may be referred to the program on the eve of trial by the personal injury master calendar courts in the Stanley Mosk Courthouse or the asbestos calendar court in CCW.

  In order to access the Los Angeles Superior Court MSC Program the judge in the IC courtroom, the CCW Courtroom or the personal injury master calendar courtroom must refer the parties to the program.  Further, all parties must complete the information requested in the Settlement Conference Intake Form and email the completed form to mscdept18@lacourt.org.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

## Additional Information

To locate a dispute resolution program or neutral in your community:

- Contact the California Department of Consumer Affairs (www.dca.ca.gov) Consumer Information Center toll free at 800-952-5210, or;
- Contact the local bar association (http://www.lacba.org/) or;
- Look in a telephone directory or search online for "mediators; or "arbitrators."

There may be a charge for services provided by private arbitrators and mediators.

A list of approved State Bar Approved Mandatory Fee Arbitration programs is available at http://calbar.ca.gov/Attorneys/MemberServices/FeeArbitration/ApprovedPrograms.aspx#19

To request information about, or assistance with, dispute resolution, call the number listed below. Or you may call a Contract Provider agency directly. A list of current Contract Provider agencies in Los Angeles County is available at the link below.

http://css.lacounty.gov/programs/dispute-resolution-program-drp/

County of Los Angeles Dispute Resolution Program
3175 West 6th Street, Room 406
Los Angeles, CA 90020-1798
TEL: (213) 738-2621
FAX: (213) 386-3995

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

PRELIMINARY FACT SHEET
(PERSONAL INJURY COMPLAINT)

## I.   __BACKGROUND INFORMATION__

Name: _Carolyn Una Weirick_____

Address: ___536 Dobbins Drive_____ City: _San Gabriel_____ State: ___CA_____

Number of years at present address: _12_____ Number of years living in the current state:_____

Date of Birth:_December 13, 1958_____

Based on the current facts, do plaintiff(s) intend on filing a motion for preference?

___X____ Yes _____ No _____ Do Not Know

Have you received, or have you applied for, Medicare benefits of Social Security Disability benefits?

_____Yes    _____ No

Have you ever resided in California? ___X____Yes _____No. If YES, provide cities in California where you resided and the dates you resided in each city.

| City | | Dates | |
|---|---|---|---|
| City | Palo Alto, CA | Dates | 1958-1959 |
| City | Riverside, CA | Dates | 1959 |
| City | Altadena, CA | Dates | 1960-1961 |
| City | Pasadena, CA | Dates | 1962-1970 |
| City | San Marino, CA | Dates | 1970-1976 |
| City | Eugene, OR | Dates | 1976-1980 (college; returning home for breaks and summers to San Marino, CA) |
| City | San Francisco, CA | Dates | 1980-1983 |
| City | Washington DC | Dates | 1983-1987 |
| City | Portland, OR | Dates | 1987-2000 |
| City | San Marino, CA | Dates | 2000-2002 |
| City | Montrose, CA | Dates | 2002-2005 |
| City | San Gabriel, Ca | Dates | 2005 - present |

## II.   __EXPOSURE__

Date of First Claimed Asbestos Exposure: _1958_ Date of Last Claimed Asbestos Exposure: _2016._

For each asbestos-containing product to which you claim you were exposed, please provide the following information (fill in the chart):

| Defendant | Product at Issue | Date(s) of Exposure | Employer | Location of Exposure | Type of Exposure (Direct Occupational, Para-Occupational or Non-Occupational) |
|---|---|---|---|---|---|
| BRENNTAG NORTH AMERICA, INC. (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.); | Talc distributed for use in talcum powder products | Approx. 1958-2016 | N/A | Palo Alto; Riverside; Altadena; Pasadena; San Marino; Eugene, San Francisco; Washington DC; Portland; Montrose; San Gabriel | Direct Non-Occupational |
| BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.); | Talc distributed for use in talcum powder products | Approx. 1958-2016 | N/A | Palo Alto; Riverside; Altadena; Pasadena; San Marino; Eugene, San Francisco; Washington DC; Portland; Montrose; San Gabriel | Direct Non-Occupational |
| CAL OAKS PHARMACY, INC.; | Distribution of talcum powder products, including Johnson & Johnson Baby Powder | Approx. 1970s-2000s | N/A | San Marino; San Gabriel | Direct Non-Occupational |
| CHANEL, INC.; | Talcum powder products, including Chanel No. 5 After Bath Body Powder | Approx. 1958-2016 | N/A | Palo Alto; Riverside; Altadena; Pasadena; San Marino; San Gabriel | Direct Non-Occupational and Bystander Non-Occupational |
| CYPRUS AMAX MINERALS COMPANY (sued individually, doing business as, and as successor to | Talc distributed for use in talcum powder products | Approx. 1958-2016 | N/A | Palo Alto; Riverside; Altadena; Pasadena; San Marino; Eugene, San Francisco; Washington | Direct Non-Occupational |

| | | | | | |
|---|---|---|---|---|---|
| METROPOLITAN TALC CO. INC. and CHARLES MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY); | | | | DC; Portland; Montrose; San Gabriel | |
| IMERYS TALC AMERICA, INC. (sued individually and as successor-in-interest to LUZENAC AMERICA, INC. successor-in-interest to CYPRUS INDUSTRIAL MINERALS COMPANY); | Talc distributed for use in talcum powder products | Approx. 1958-2016 | N/A | Palo Alto; Riverside; Altadena; Pasadena; San Marino; Eugene, San Francisco; Washington DC; Portland; Montrose; San Gabriel | Direct Non-Occupational |
| JOHNSON & JOHNSON; | Talcum powder products, including Johnson & Johnson Baby Powder and Shower-to-Shower | Approx. 1958-2016 | N/A | Palo Alto; Riverside; Altadena; Pasadena; San Marino; Eugene, San Francisco; Washington DC; Portland; Montrose; San Gabriel | Direct Non-Occupational |
| JOHNSON & JOHNSON CONSUMER INC., a subsidiary of JOHNSON & JOHNSON; | Talcum powder products, including Johnson & Johnson Baby Powder and Shower-to-Shower | Approx. 1958-2016 | N/A | Palo Alto; Riverside; Altadena; Pasadena; San Marino; Eugene, San Francisco; Washington DC; Portland; Montrose; San Gabriel | Direct Non-Occupational |
| VALEANT PHARMACEUTICALS INTERNATIONAL; | Talcum powder products, including Shower-to-Shower | Approx. 1970-2000s | N/A | San Marino; Eugene, San Francisco; Washington DC; Portland; Montrose; San Gabriel | Direct Non-Occupational |
| VALEANT PHARMACEUTICALS NORTH AMERICA LLC; | Talcum powder products, including Shower-to-Shower | Approx. 1970-2000s | N/A | San Marino; Eugene, San Francisco; Washington DC; Portland; Montrose; San Gabriel | Direct Non-Occupational |

| WHITTAKER CLARK & DANIELS, INC.; | Talc distributed for use in talcum powder products | Approx. 1958-2016 | N/A | Palo Alto; Riverside; Altadena; Pasadena; San Marino; Eugene, San Francisco; Washington DC; Portland; Montrose; San Gabriel | Direct Non-Occupational |
|---|---|---|---|---|---|

Identify Have you ever served in the military? _____Yes ___X___No

If yes:

(a) Identify the branch of service: _____

(b) Identify the dates of service: _____

(c) Identify the rank and title: _____

## III.    MEDICAL HISTORY

1.    Which of the following diseases have you been diagnosed with? Check all that apply:

___X___ Mesothelioma (pleural)
_____ Mesothelioma (peritoneal)
_____ Lung Cancer – Squamous Cell/Adenocarcinoma/Small Cell/ Other (circle one)
_____ Asbestosis
_____ Pleural Disease
_____ Other      Specify: _____

2.    Date of diagnosis and name of diagnosing doctor (per disease, if more than one): _____ 2/21/17

US-Canadian Mesothelioma Reference Panel, Department of Pathology, Vancouver General Hospital

3.    Does any pathology material exist for the individual claiming as asbestos-related injury?

____X___Yes      _____No
If YES, please identify what material exists and where it is presently located: _____ UCSF;
destructive testing may not be conducted without Court Order

4.    Have you ever smoked? _X_____Yes      _____ No

If YES, state years and quantity smoked: 1980-1985; ½ pack