1   ALEXANDER G. CALFO (SBN 152891)
    *acalfo@kslaw.com*
2   JULIA E. ROMANO (SBN 260857)
    *jromano@kslaw.com*
3   CARTER L. GEORGE (SBN 308775)
    *cgeorge@kslaw.com*
4   **KING & SPALDING LLP**
    633 West 5th Street, Suite 1600
5   Los Angeles, CA 90071
    Telephone:  +1 213 443 4355
6   Facsimile:   +1 213 443 4310

7

8   Attorneys for Defendants
    JOHNSON & JOHNSON and
9   JOHNSON & JOHNSON CONSUMER INC.

10

11                **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13                    **WESTERN DIVISION**

14

15   CAROLYN WEIRICK and ELVIRA          Case No. 2:19−cv−03036−CJC−JCx
     GRACIELA ESCUDERO LORA,
16
              Plaintiffs,              **DEFENDANTS JOHNSON &**
17                                     **JOHNSON AND JOHNSON &**
         v.                            **JOHNSON CONSUMER INC.'S**
18                                     **MEMORANDUM IN OPPOSITION**
     BRENNTAG NORTH AMERICA,           **TO PLAINTIFFS' *EX PARTE***
19   INC. (sued individually and as    **APPLICATION FOR IMMEDIATE**
     successor-in-interest to MINERAL  **CONSIDERATION OF**
20   PIGMENT SOLUTIONS, INC. and as    **EMERGENCY MOTION FOR**
     successor-in-interest to WHITTAKER **REMAND TO STATE COURT**
21   CLARK & DANIELS, INC.), et al.,
22            Defendants.
23                                     Removed from Superior Court of
                                       California, Los Angeles County,
24                                     Case No. JCCP 4674 / BC656425

25

26

27

28                                    1

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................**ERROR! BOOKMARK NOT DEFINED.**

STATEMENT OF FACTS AND PROCEDURAL HISTORY**ERROR! BOOKMARK N**

ARGUMENT...................................**ERROR! BOOKMARK NOT DEFINED.**

I.     This Court Should Hold the Remand Motion in
       Abeyance Until After the Delaware District Court
       Decides the Venue Motion...........**Error! Bookmark not defined.**

II.    J&J Timely and Properly Removed This Action Under
       Bankruptcy Rule 9027, 28 U.S.C. § 1452, and
       Applicable Local Rules ................................................. 10

III.   This Court has Subject Matter Jurisdiction as "Related
       To" Debtors' Chapter 11 Case under 28 U.S.C.
       § 1334(b) ......................................**Error! Bookmark not defined.**

IV.    This Court Should Not Conduct an Abstention Analysis,
       and Any Such Analysis Disfavors Abstaining Here ................... 19

       A.     The Delaware District Court is the Proper Court
              to Conduct an Abstention Analysis ................................. 19

       B.     Mandatory Abstention is Inapplicable Here
              Because 28 U.S.C. § 157(b)(4) Exempts Personal
              Injury and Wrongful Death Claims ................................. 20

       C.     This Court Should Decline to Permissively
              Abstain .............................................................................. 21

V.     Considerations Under Equitable Remand Support
       Denying Plaintiffs' Remand Motion............................................ 22

CONCLUSION.................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.H. Robins Co., Inc. v. Piccinin*,
788 F.2d 994 (4th Cir. 1986) ....................................................................*passim*

*Abbatiello v. Monsanto Co.*,
No. 06 CIV. 266 (KMW), 2007 WL 747804 (S.D.N.Y. Mar. 8,
2007) ..........................................................................................................20

*Arnold v. Garlock, Inc.*,
278 F.3d 426 (5th Cir. 2001) ......................................................................17

*In re Asbestos Litig.*,
CV No:01-1790-PA, 2002 U.S. Dist. LEXIS 3083 (D. Or. Feb. 1,
2002) ..........................................................................................................12

*In re Aztec Indus., Inc.*,
84 Bankr. 464 (Bankr. N.D. Ohio 1987) ....................................................11

*Beck v. Victor Equip. Co.*,
277 B.R. 179 (S.D.N.Y. 2002) ..............................................................20, 22

*Berry v. Pharmacia Corp.*,
316 B.R. 883 (S.D. Miss. 2004) ................................................................21

*Bethlahmy v. Kuhlman (In re ACI-HDT Supply Co.)*,
205 B.R. 231 (9th Cir. Bankr. App. Panel 1997) .......................................18

*Burse v. Purdue Pharma*,
C-04-594 SC, 2004 WL 1125055, at *4–5 (N.D. Cal. May 3, 2004) ...............9

*Calumet Nat'l Bank v. Levine*,
179 B.R. 117 (N.D. Ind. 1995) ...............................................................7, 8

*In re Combustion Eng'g, Inc.*,
391 F.3d 190 (3d Cir. 2004) ................................................................15, 17

*Davis v. Ocwen Fed. Bank*,
No. 3:05cv1229-MHT (WO), 2006 U.S. Dist. LEXIS 3221 (M.D.
Ala. Jan. 19, 2006) ....................................................................................13

i

*In re Donington, Karcher, Salmond Ronan & Rainone, P.A.*,
  194 B.R. 750 (D.N.J. 1996) ................................................................ 10

*In re Dow Corning Corp*,
  86 F.3d 482 (6th Cir. 1996) ...................................... 3, 11, 18, 19

*In re Fed.-Mogul Glob., Inc.*,
  282 B.R. 301 (Bankr. D. Del. 2002) ................................. 14, 15, 16, 17

*Fed. Mogul Glob., Inc.*,
  300 F.3d 368 (3d Cir. 2002) ......................................... 15, 18

*In re Fietz*,
  852 F.2d 455 (9th Cir. 1988) ........................................... 18

*GSL of Ill, LLC v. Pitt Penn Oil Co., LLC*,
  No. 09cv0571, 2009 U.S. Dist. LEXIS 51428 (W.D. Pa. June 17,
  2009) ..................................................................... 11, 14

*Hall v. Chrysler Grp. LLC*,
  No. CV 11-05866 GAF, 2011 U.S. Dist. LEXIS 163683 (C.D. Cal.
  Sept. 29, 2011) ............................................................ 12

*Hopkins v. Plant Insulation Co.*,
  342 B.R. 703 (D. Del. 2006) ................................... 20, 21, 22

*Hopkins v. Plant Insulation Co.*,
  349 B.R. 805 (N.D. Cal. 2006) ............................................. 8

*Jackson ex rel. Jackson v. Johnson & Johnson, Inc.*,
  No. 01-2113 DA, 2001 WL 34048067 (W.D. Tenn. Apr. 3, 2001) .............. 13

*Lent v. Chesterton*,
  No. C 09-3941, 2009 WL 3561531 (N.D. Cal. Oct. 27, 2009) ............... 15

*In re Lower Bucks Hosp.*,
  488 B.R. 303 (E.D. Pa. 2013), aff'd, 571 F. App'x 139 (3d Cir.
  2014) ....................................................................... 14

*Meyers v. Bayer AG*,
  143 F. Supp. 2d 1044 (E.D. Wisc. 2001) ................................... 9

ii

*In re Montreal Maine & Atl. Ry., Ltd.*,
    No. 1:13-MC-00184-NT, 2014 WL 1155419 (D. Me. Mar. 21,
    2014) ........................................................................................................ 19

*In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*,
    496 B.R. 256 (D. Mass. 2013) ................................................... 2, 19, 20

*In re Nutraquest, Inc.*,
    No. 03-5869 (GEB), 2004 U.S. Dist. LEXIS 29143 (D.N.J. Mar. 5,
    2004) ................................................................................................*passim*

*Pac. Inv. Mgmt. Co., LLC v. Am. Int'l Grp., Inc.*,
    NO. CV 15-0687-DOC, 2015 WL 361833 (C.D. Cal. June 10,
    2015) .................................................................................................... 8, 9

*In re Pacor, Inc.*,
    72 B.R. 927 (Bankr. E.D. Pa. 1987) ...................................................*passim*

*In re Pan Am. Corp.*,
    950 F.2d 839 (2d Cir. 1991) ........................................................... 22, 24

*In re Riverside Nursing Home*,
    144 B.R. 951 (S.D.N.Y 1992) .............................................................. 23

*Estate of Scott v. Cervantes*,
    No. CV 08-03293 MMM, 2008 U.S. Dist. LEXIS 129198 (C.D.
    Cal. July 29, 2008) .............................................................................. 12

*Skylark v. Honeywell Int'l, Inc.*,
    No. 01-5069-CIV, 2002 WL 32101980 (S.D. Fla. Jan. 25, 2002) .............. 15

*Things Remembered, Inc. v. Petrarca*,
    516 U.S. 124 (1995) ............................................................................ 11

*In re Twin Labs.*,
    300 B.R. 836 (S.D.N.Y. 2003) .......................................................*passim*

*In re W.R. Grace & Co.*,
    386 B.R. 17 (Bankr. D. Del. 2008)................................................. 18, 24

*Western Helicopters, Inc. v. Hiller Aviation, Inc.*,
    97 B.R. 1 (E.D. Cal. 1988) .................................................................. 12

*Whittingham v. CLC of Laurel, LLC*,

iii

No. 2:06cv11-KS-MTP, 2006 WL 2423104 (S.D. Miss. Aug. 22, 2006) .................................................................................................... 7, 13

*Williams v. Shell Oil Co.*,
    169 B.R. 684 (S.D. Cal. 1994) ........................................................... 23

*In re WorldCom, Inc. Sec. Litig.*,
    293 B.R. 308 (S.D.N.Y. 2003) ....................................................... 8, 22

**Statutes**

11 U.S.C. § 1101 ...................................................................................... 5

11 U.S.C. § 1107 ...................................................................................... 5

11 U.S.C. § 1108 ...................................................................................... 5

28 U.S.C. § 157 ................................................................................ *passim*

28 U.S.C. § 1332 .................................................................................... 21

28 U.S.C. § 1334 ............................................................................. *passim*

28 U.S.C. §1452 .............................................................................. *passim*

28 U.S.C. § 1441 ............................................................................. *passim*

**Other Authorities**

Fed. R. Bankr. P. 9027 ................................................................... *passim*

Plaintiffs' Emergency Motion to Remand to State Court (the "Remand Motion") should be denied because Johnson & Johnson and Johnson & Johnson Consumer Inc. (together, "J&J") properly and timely removed this action under Rule 9027 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and the relevant bankruptcy statutes, 28 U.S.C. §§ 1334 and 1452. And under the controlling bankruptcy statutory framework, 28 U.S.C. §§ 157(b)(5) and 1334(b), the United States District Court for the District of Delaware ("District of Delaware" or "Delaware District Court") has the sole authority to ultimately fix venue in this action and decide whether it, and claims against J&J asserted in approximately 2,400 similar actions that were or will be removed to district courts across the country, should be centrally administered in Delaware as "related to" the chapter 11 cases of J&J's sole talc supplier Imerys Talc America, Inc. and two affiliates, Imerys Talc Vermont, Inc., and Imerys Talc Canada, Inc. (collectively, the "Debtors"). Accordingly, this Court need not take any action at this time; instead, it should defer ruling on the Remand Motion until the Delaware District Court issues its ruling on the pending venue motion.

## INTRODUCTION

Historically, the Debtors have been J&J's sole supplier of the cosmetic talc used in its iconic baby powder products. Prior to removal, this action was one of thousands proceeding in state courts across the country in which plaintiffs allege that exposure to talc supplied by the Debtors and used in J&J's baby powder products caused the plaintiffs' injuries (the "State Court Talc Claims").[1] Beset by an avalanche of personal injury lawsuits, including a large percentage of the very

---

[1] The State Court Talc Claims are brought in roughly 2,400 actions, involving approximately 1,400 ovarian cancer actions and 980 non-ovarian cancer actions (predominately mesothelioma-related injuries). The State Court Talc Claims exclude, in the interest of judicial economy, claims on appeal of final judgments or subject to post-trial motions, as well as those in which a trial is ongoing.

same State Talc Claims also pending against J&J, the Debtors sought chapter 11 protection in the United States Bankruptcy Court for the District of Delaware (the "Chapter 11 Case"). In light of Debtors' bankruptcy, and given the Debtors' claims to J&J's insurance and indemnification from J&J, as well as J&J's contractual rights to unlimited indemnity from and shared insurance with the Debtors, a centralized venue for adjudication of the State Court Talc Claims has become necessary to best serve not only J&J but the Debtors' creditors, including personal injury plaintiffs like Ms. Weirick.

Courts have long recognized the benefits of using 28 U.S.C. § 157(b)(5) to aggregate nationwide claims—both federal and state, against debtors and non-debtors alike—into one, centralized forum.[2] On April 18, 2019, J&J filed in the District of Delaware a Motion to Fix Venue for Claims Related to Imerys's Bankruptcy Under 28 U.S.C. §§ 157(b)(5) and 1334(b) (the "Venue Motion"), *see* Dkt No. 1-4 (Ex. C Part 2). As set forth in the Venue Motion, § 157(b)(5) vests the Delaware District Court with sole authority to set venue for the State Court Talc Claims. Under 28 U.S.C. § 1334(b), there exists federal subject matter jurisdiction over all personal injury and wrongful death claims that are "related to" the Debtors' estates.

---

[2] *See, e.g., A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) (affirming transfer and centralization of thousands of state and federal personal injury cases against debtors and non-debtor co-defendants); *In re Montreal Maine & Atl. Ry., Ltd.*, No. 1:13-MC-00184-NT, 2014 WL 1155419, at *5, *9-10, *12 (D. Me. Mar. 21, 2014) (transferring product liability claims against non-debtors under § 157(b)(5), finding "related to" jurisdiction based on shared insurance with and "an unconditional right to indemnification from" debtor); *In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*, 496 B.R. 256, 264-65 (D. Mass. 2013) (transferring and aggregating cases, including cases against non-debtors, to a single forum, under § 157(b)(5), in the interests of judicial efficiency and the fair and efficient distribution of the debtors' estate); *In re Nutraquest, Inc.*, No. 03-5869 (GEB), 2004 U.S. Dist. LEXIS 29143, at *42-43 (D.N.J. Mar. 5, 2004) (denying motion to remand and finding "related to" jurisdiction over transferred claims against non-debtors, citing the "strong legislative presumption in favor of transfer under §157(b)(5)") (quoting *In re Twin Labs.*, 300 B.R. 836, 841 (S.D.N.Y. 2003)).

2

While denial of the Remand Motion is appropriate now, this Court need not rule on the Remand Motion at this time. The District of Delaware has the sole authority to fix venue in this action. Should that Court grant J&J's Venue Motion, venue for this action will be fixed in Delaware; the case will be transferred there, mooting the Remand Motion. Furthermore, given the resources of the Delaware District Court and the expected speed with which we anticipate the Venue Motion to be heard, any delay to the adjudication of plaintiffs' claims will be slight. In the interest of judicial economy and comity, this Court should hold the Remand Motion in abeyance until the Delaware District Court exercises its sole authority and rules on the Venue Motion.

In any event, the State Court Talc Claims, including Plaintiffs' claims in this action, are "related to" the Debtors' Chapter 11 Case because supply agreements between the Debtors and J&J contain contractual indemnifications, including indemnifications in favor of J&J, triggered upon the filing of these personal injury claims without regard to ultimate findings on liability. The State Court Talc Claims, including Plaintiffs' claims, are also "related to" the Debtors' Chapter 11 Case because Debtors have claimed rights to approximately two billion dollars of J&J's insurance for expenses incurred in defending against the thousands of talc-related lawsuits. *See* Dkt. No. 1, Ex. C, Nolan Decl., Ex. 1 (First Day Declaration) ¶ 42. These contractual indemnification claims and claims on shared insurance stand to impact the pool of assets available for Debtors' creditors. Moreover, Courts have recognized identity of interest in sale of a single product as additional grounds for "related to" jurisdiction.[3] Here, the Debtors exclusively supplied the talc in the talcum powder products sold by J&J. Thus, each State Court Talc Claim

---

[3] *See, e.g.*, *A.H. Robins*, 788 F.2d at 999; *In re Dow Corning*, 86 F.3d 482, 493-94 & n.11 (6th Cir. 1996); Dkt. No. 1, Ex. C, Nolan Decl., Ex. 14 (TKH Hr'g Tr.) at 16:17–25.

J&J DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION / EMERGENCY MOTION FOR REMAND TO STATE COURT

plaintiff can draw a straight line from the two J&J talcum powder products at issue to the Debtors' talc.

In coordination with the filing of the Venue Motion, this action was properly and timely removed under Rule 9027 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and 28 U.S.C. §§ 1334 and 1452. Rule 9027, which provides 90 days to remove, is specifically applicable to bankruptcy-related removals and thus controls here. Plaintiffs' reliance on the 30-day removal statute, 28 U.S.C. § 1446(b), is, therefore, misplaced.

With jurisdiction firmly established (and more properly decided by the Delaware District Court), and because mandatory abstention is inapplicable under these circumstances, the only basis on which the Court could remand this properly and timely-removed action would be equitable grounds under 28 U.S.C. § 1452(b). Here, these equitable considerations overwhelmingly favor denying the Remand Motion. Indeed, remand of this action, like remand of the State Court Talc Claims generally, would only perpetuate the inefficiencies and inconsistencies that J&J's Venue Motion seeks to avoid. This is particularly true here since the Delaware District Court has authority to effectuate transfer of any State Court Talc Claims removed in connection with the Venue Motion, even if those cases have already been remanded to state court by the time the Venue Motion is decided. *See, e.g.*, Dkt. No. 1, Ex. C, Nolan Decl., Ex. 15 (*Hopkins v. Plant Insulation Co.*, No. 06-cv-298-JJF (D. Del. May 22, 2006)), Mem. Order 3 (noting that "the Court may consider the transfer of this case under Section 157(b) regardless of the decisions reached by the California court on the transfer and remand issues").

Ms. Weirick is not alone in wanting a prompt disposition of her claim. There are thousands of plaintiffs around the country seeking their day in court—nearly all

4

of them diagnosed with cancer and many of them with a poor medical prognosis.[4] Plaintiffs' counsel knows this well, as they represent many other plaintiffs whose State Court Talc Claims are not yet set for trial because of the thousands of cases currently burdening the state court system. Transferring all of the State Court Talc Claims to the District of Delaware affords *all* plaintiffs—not just those with a current trial date—the best chance for an efficient adjudication of their claims while they are still alive. The District of Delaware, under the bankruptcy venue statute invoked here, has more resources at its disposal to facilitate this adjudication, such as by holding a single general causation hearing relating to all the State Court Talc Claims, setting trials or bellwether trials, and remanding cases if appropriate to federal court venues around the country for expedited trials. Indeed, J&J's Venue Motion stands to benefit all of Debtors' creditors, including all of the State Court Talc Claim plaintiffs who are equally desirous of their day in court.[5]

## **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

On February 13, 2019, the Debtors each filed voluntary chapter 11 petitions, which are being jointly administered in the reorganization proceedings styled: *In re: Imerys Talc America, Inc., et al.*, Case No. 19-10289-LSS, in the United States Bankruptcy Court for the District of Delaware. Since the Chapter 11 Case was commenced, the Debtors have remained as debtors in possession under 11 U.S.C. § 1101 and have the rights, powers, and duties set out in 11 U.S.C. §§ 1107 and 1108.

---

[4] Ms. Weirick has already had her case heard by a jury once.  Plaintiffs tried this case last August to a Pasadena jury that was unable to reach a verdict, resulting in a mistrial.  The parties agreed to a re-trial date of April 29, 2019.  Since filing its Venue Motion, J&J has met all pre-trial deadlines for the April 2019 trial, even though Plaintiffs in this case have not done the same.

[5] If the State Court Talc Claims are transferred, the Delaware District Court in its discretion can set or transfer cases for expeditious jury trials on application by in extremis plaintiffs."

J&J DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION / EMERGENCY MOTION FOR REMAND TO STATE COURT

On April 18, 2019, J&J filed its Venue Motion in the District of Delaware. *See In re Imerys Talc America, Inc.*, Case No. 19-mc-00103, Dkt No. 1 (D. Del.). Through the Venue Motion, J&J seeks to consolidate the State Court Talc Claims, among others, in the District of Delaware. The Venue Motion and supporting papers were submitted to this Court with J&J's Notice of Removal. *See* Dkt. No. 1. As noted in the Memorandum of Law supporting the Venue Motion, Dkt. No. 1-4, the primary purpose of the Venue Motion is to centralize approximately 2,400 of claims against J&J—all of which allege that the Debtors' talc caused personal injury and/or wrongful death—in one forum, i.e., the Delaware District Court. *See id.*

Under Bankruptcy Rule 9027(a)(1), the deadline to remove prepetition claims related to the Debtors' bankruptcy estates is "90 days after the order for relief under the Code." See Fed. R. Bankr. P. 9027(a)(1); 28 U.S.C. § 1452(a). Therefore, the removal deadline is May 14, 2019. On April 18, 2019—nearly a month before the removal deadline, J&J filed a notice of removal in this Court. *See* Dkt. No. 1 (the "Notice of Removal"). In accordance with Bankruptcy Rule 9027(b), J&J promptly served written notice of the removal on Plaintiffs' counsel of record. On April 19, 2019, consistent with Bankruptcy Rule 9027(c), J&J filed a copy of the Notice of Removal with the clerk of the Los Angeles County Superior Court (the "State Court") from which this case was removed. (Dkt. No. 12).  As of that filing, "[t]he parties shall proceed no further in that court unless and until the claim or cause of action is remanded." Fed. R. Bankr. P. 9027(c). In addition, on April 23, 2019, J&J filed a Notice of Pendency of Other Actions or Proceedings and Request for a Stay of Proceedings. (Dkt. No. 7.)

On the evening of April 23, 2019, Plaintiffs filed an Ex Parte Application for Immediate Consideration of Emergency Motion for Remand to State Court.  (Dkt. No. 10.)

J&J DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION / EMERGENCY MOTION FOR REMAND TO STATE COURT

## **ARGUMENT**

**I.    This Court Should Hold the Remand Motion in Abeyance Until After the Delaware District Court Decides the Venue Motion**

This Court need not expend judicial resources deciding the Remand Motion while the Venue Motion is pending before the Delaware District Court. A speedy decision from the District of Delaware granting the Venue Motion would fix venue for the State Court Talc Claims in Delaware, effectively transferring this action to the District of Delaware.

28 U.S.C. § 157(b)(5) instructs "that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, *as determined by the district court in which the bankruptcy case is pending*." (emphasis added). In cases involving transfer and remand motions, courts have held that the "*transferee*" court under section 157(b)(5) is the proper forum to decide the remand motion. *See Whittingham v. CLC of Laurel, LLC*, No. 2:06cv11-KS-MTP, 2006 WL 2423104, at *1 (S.D. Miss. Aug. 22, 2006) ("Plaintiff has filed a Motion for Remand and Request for this Court to abstain. This issue needs to be considered as a part of the big picture. The District Court in Georgia [with jurisdiction over the bankruptcy] should consider this issue."); *see also Calumet Nat'l Bank v. Levine*, 179 B.R. 117, 123 (N.D. Ind. 1995) (staying all proceedings while debtor-defendant pursued section 157(b)(5) motion and deferring ruling on pending motions because "whichever court ultimately takes the case should be the one that rules on the remaining argument"); *cf. Jackson ex rel. Jackson v. Johnson & Johnson, Inc.*, No. 01-2113 DA, 2001 WL 34048067, at *6 (W.D. Tenn. Apr. 3, 2001) (holding that transferee court in multidistrict litigation is "a proper authority to decide the remand motion" and "[t]he general rule is for federal courts to defer ruling on pending motions to remand in [multidistrict litigation]" until after the case is

J&J DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION / EMERGENCY MOTION FOR REMAND TO STATE COURT

transferred). This is consistent with the language and purpose of section 157(b)(5). *See Calumet*, 179 B.R. at 121 ("[A] purpose behind section 157(b)(5) is making it possible for a single forum to oversee the many claims and proceedings that might arise in or affect a bankruptcy case."). Accordingly, because J&J has moved under § 157(b)(5) to fix venue in the Delaware District Court, it is the Delaware District Court rather than this Court that should engage in any abstention analyses or otherwise consider remand issues in the first instance.[6]

Courts routinely defer ruling on motions to remand until after the court vested with the authority to fix venue under section 157(b)(5), here the District of Delaware, decides whether the case would be transferred. *See, e.g.*, *Hopkins v. Plant Insulation Co.*, 349 B.R. 805, 808 n.2 (N.D. Cal. 2006) (granting remand motion *after* decision was issued by district court where bankruptcy was pending on whether to fix venue in central location). Plaintiffs incorrectly imply that the Delaware District Court will not, or should not, rule on the Venue Motion until after the remand motions are resolved. As support, Plaintiffs quote *Pac. Inv. Mgmt. Co., LLC v. Am. Int'l Grp., Inc.*, NO. CV 15-0687-DOC (DFMx), 2015 WL 3631833, at *4 (C.D. Cal. June 10, 2015), and assert that "[i]t is settled practice in the Ninth Circuit to rule on remand motions before deciding motions to transfer." Pls. Mem. at 15, n.9. Yet, Plaintiffs ignore the two exceptions this Court went on to describe in *Pacific Investment Management*, both of which are applicable here: "multi-district litigation where the 'judicial economy and consistency' of related cases will be aided by transfer of a case within the federal system" and cases "where 'related to [bankruptcy] jurisdictional (sic) and removal' raises 'difficult

---

[6] As acknowledged by Plaintiffs, Pls. Mem. at 3, the permissive abstention analysis under 1334(c)(1) is essentially identical to equitable remand analysis under section 1452(b). *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 334 (S.D.N.Y. 2003). Accordingly, the same equitable considerations that overwhelmingly support denial of the Remand Motion under section 1452(b), also disfavor permissive abstention under section 1334(c)(1).

8

questions." *Pac. Inv. Mgmt.*, 2015 WL 3631833, at *14 (alterations in original) (quoting *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1049 (E.D. Wisc. 2001).[7] Similarly, the court in *Burse v. Purdue Pharma*, which Plaintiffs also cite, recognized that, despite the "apparent practice within the Ninth Circuit," "a court's decision whether to decide on a remand or transfer motion first is extremely sensitive to the facts of the particular case." C-04-594 SC, 2004 WL 1125055, at *4–5 (N.D. Cal. May 3, 2004).

Setting venue in this case is left to the exclusive discretion of the Delaware District Court. And, should the Delaware District Court find that it has jurisdiction, remand will be inappropriate unless *that* court chooses, against a "strong legislative presumption in favor of transfer," to abstain following abstention analyses. *In re Nutraquest, Inc.*, No. 03-5869 (GEB), 2004 U.S. Dist. LEXIS 29143, at *43 (D.N.J. Mar. 5, 2004) (quoting *In re Twin Labs.*, 300 B.R. 836, 841 (S.D.N.Y. 2003)).

Further to this point, under § 157(b)(5), the Delaware District Court may fix venue for this action, even if it has already been remanded, thus underscoring the waste of resources involved in ruling on any remand motion. *See* Dkt. No. 1, Ex. C, Nolan Decl., Ex. 15 (*Hopkins v. Plant Insulation Co.*, No. 06-cv-298-JJF (D. Del. May 22, 2006)), Mem. Order 3 (noting that "the Court may consider the transfer of this case under Section 157(b) regardless of the decisions reached by the California court on the transfer and remand issues"); *see also A.H. Robins*, 788 F.2d at 998 (affirming district judge's order transferring claims, *wherever pending*, to a single forum) (emphasis added); *In re Dow Corning*, 86 F.3d at 493 (citing with approval the order entered in *A.H. Robins*). In the interests of comity,

---

[7] In any event, this Court only has the Remand Motion before it. *Neither* this Court nor the Delaware District Court is "faced with concurrent motions to remand *and* transfer." *Pac. Inv. Mgmt. Co.* 2015 WL 3631833, at *4 (emphasis added). So Plaintiffs' assertions regarding the relative order in which a court should decide concurrent motions are irrelevant.

efficiency, and achieving uniform outcomes by coordinated judicial proceedings, this Court should await the District of Delaware's forthcoming decision on the Venue Motion before issuing a ruling on the Remand Motion.

## II. J&J Timely and Properly Removed This Action Under Bankruptcy Rule 9027, 28 U.S.C. § 1452, and Applicable Local Rules

Plaintiffs erroneously rely on 28 U.S.C. § 1446, which outlines procedure under the general removal statute, 28 U.S.C. § 1441,[8] to suggest J&J's removal of this action was untimely. Plaintiffs claim that "[t]he 30-day deadline in § 1446 applies to bankruptcy removals, and it trumps the 90-day deadline in Bankruptcy Rule 9027." Pls. Mem. at 6:7–8. Plaintiffs' assertion finds no support in the leading case law. The majority of courts "have established that the time limits stated in Bankruptcy Rule 9027 should control with regard to Section 1452." *GSL of Ill, LLC v. Pitt Penn Oil Co., LLC*, No. 09cv0571, 2009 U.S. Dist. LEXIS 51428, at *4 (W.D. Pa. June 17, 2009); *see also In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 756 (D.N.J. 1996) ("The majority of courts have upheld the applicability of Bankruptcy Rule 9027 to Section 1452 and enforce a ninety day time limitation.") (citing *Textron Investment Mgmt. Co. v. Struthers Thermo-Flood Corp.*, 169 Bankr. 206, 210 (D. Kan. 1994); *In re Klober*, 142 Bankr. 300, 301 (Bankr. E.D. Ark. 1992); *In re Pacor, Inc.*, 72 Bankr. 927, 930-31 (Bankr. E.D. Pa. 1987); *In re Futura Indus., Inc.*, 69 Bankr. 831, 833 (Bankr. E.D. Pa. 1987); *In re Philadelphia Gold Corp.*, 56 Bankr. 87, 89-90 (Bankr. E.D. Pa. 1985)). The majority rationale is based upon the view that "Rule 9027 was *not* so tied to the former removal statute, § 1478, that the repeal of § 1478, and the subsequent enactment of § 1452, caused the implicit repeal of Rule 9027." *Id.* at

---

[8] Bankruptcy Rule 9027 governs the procedure for removals under 28 U.S.C. § 1452.

J&J DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION / EMERGENCY MOTION FOR REMAND TO STATE COURT

756 (quoting *In re Aztec Indus., Inc.*, 84 Bankr. 464, 469 (Bankr. N.D. Ohio 1987)). In other words, the deadlines set forth by Bankruptcy Rule 9027 remain in effect and control here.

To elaborate on this issue, the court in *In re Pacor, Inc.*, 72 B.R. 927, 930–31 (Bankr. E.D. Pa. 1987), succinctly stated:

> When Congress enacted 28 U.S.C. § 1452, its intent was simply to alter the statutory reference from bankruptcy court to district court. S. Rep. No. 98-55, 98th Cong., 1st Sess. 43 (1983). It expressed no desire to alter the procedure or time periods set out in Rule 9027 which were then in effect. Indeed, the proposed amendments to Bankr. Rule 9027 maintain the time limits currently existing in this rule and alter the procedure by having the removed application filed with the district court clerk. Moreover, since § 1446 makes no provision for removal by a plaintiff, while § 1452 continues to allow plaintiffs to remove, it is difficult to see how Rule 9027 could be supplanted by § 1446 unless one also supplants § 1452 by § 1441.

In rejecting the minority view proposed by Plaintiffs, the court in *Pacor* observed that courts following the minority view "simply neglect[] to take into account the significant differences between removal under § 1452 and § 1441," as well as "the bankruptcy policies implicit in those differences." *In re Pacor, Inc.*, 72 B.R. 931.[9] Specifically, to effectuate those policies, "Congress intended to allow the rule making process to establish the removal procedure for bankruptcy related

---

[9] "Congress, when it added § 1452 to the Judicial Code chapter on removal of cases from state courts—a chapter now comprising 28 U.S.C. §§ 1441–1452—meant to *enlarge*, not rein in, federal trial court removal/remand authority for claims related to bankruptcy cases." *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 131-32 (1995) (Ginsburg, J. concurring) (emphasis added). Notably, although cited by the Plaintiffs, *Things Remembered* does not address the interaction between the timelines set forth in Bankruptcy Rule 9027 and 28 U.S.C. § 1446.

J&J DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION / EMERGENCY MOTION FOR REMAND TO STATE COURT

proceedings from other courts." *Id.* Thus, the court concluded, "the time periods set forth in Rule 9027(a)(2), (3) are still valid." *Id.*

The United States District Court for the Central District of California agrees. *See Hall v. Chrysler Grp. LLC*, No. CV 11-05866 GAF (FMOx), 2011 U.S. Dist. LEXIS 163683, at \*11-12 (C.D. Cal. Sept. 29, 2011) ("[T]he majority of federal courts conclude that Rule 9027 controls.") (collecting cases). In *Hall*, the Honorable Gary Allen Feess held that "this Court will construe the [bankruptcy removal statute, 28 U.S.C. § 1452] as though Rule 9027 controls," *id.* at \*12, noting that "[a]t least one court within the Ninth Circuit has adopted th[e majority] position." *Id.* at \*12 (citing *Western Helicopters, Inc. v. Hiller Aviation, Inc.*, 97 B.R. 1, 4 (E.D. Cal. 1988)). In recognition of the unique concerns and policies underlying the Bankruptcy Code—protecting the Debtors' estates and creditors rights—this Court should likewise adopt the majority rule.[10] Adopting the minority view, on the other hand, would contravene standard bankruptcy practice. *Cf., e.g.*, *In re Imerys Talc America, Inc.*, No. 19-10289 (LSS), Dkt. No. 93 (Bankr.

---

[10] The cases the Plaintiffs cite to the contrary do not alter this analysis. *See* Pls. Mem. at 5:15–21. For example, *Estate of Scott v. Cervantes*, No. CV 08-03293 MMM (CWx), 2008 U.S. Dist. LEXIS 129198, at \*4 (C.D. Cal. July 29, 2008), blindly crops language—"By its plain language, the 30-day requirement of § 1446(b) applies to cases removed under § 1452"—from *Davis v. Ocwen Fed. Bank*, No. 3:05cv1229-MHT (WO), 2006 U.S. Dist. LEXIS 3221, at \*15 (M.D. Ala. Jan. 19, 2006). But the *Davis* court cited neither statute nor case law in making that proclamation. Nor did the court even consider—anywhere in its opinion—Bankruptcy Rule 9027. Finally, *In re Asbestos Litig.*, CV No:01-1790-PA, 2002 U.S. Dist. LEXIS 3083, at \*9 (D. Or. Feb. 1, 2002), bases its conclusion on a perceived conflict between 28 U.S.C. § 1446 and Bankruptcy Rule 9027, without grappling with the reasons underlying the distinction. *See id.* at \*8. As courts adopting the majority view have observed, "the removal procedures and time deadlines established by this rule are different from those set out in 28 U.S.C. §§ 1441, 1446 because of *unique concerns and policies* embodied in the Bankruptcy Code." *In re Pacor, Inc.*, 72 B.R. at 930 (citing the Advisory Committee Notes to Bankruptcy Rule 9027); *cf. GSL*, 2009 U.S. Dist. LEXIS 51428, at \*5–6 ("Under Section 1452, the time clock *cannot begin to run* until the bankruptcy claim has been filed) (citing *Shared Network Users Group, Inc.*, 309 B.R. 446, 449 (E.D. Pa. 2004)).

J&J DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION / EMERGENCY MOTION FOR REMAND TO STATE COURT

D. Del.) (moving under Bankruptcy Rule 9027 to extend the removal deadline without reference to 28 U.S.C. § 1446).

In any event, courts have held that the transferee court—here, the District of Delaware—should decide motions to remand. *See Whittingham*, 2006 WL 2423104, at *1 ("Plaintiff has filed a Motion for Remand and Request for this Court to abstain. This issue needs to be considered as a part of the big picture. The District Court in Georgia [with jurisdiction over the bankruptcy] should consider this issue."); *cf. Jackson ex rel. Jackson v. Johnson & Johnson, Inc.*, No. 01-2113 DA, 2001 WL 34048067, at *6 (W.D. Tenn. April 3, 2001) (holding that transferee court in multidistrict litigation is "a proper authority to decide the remand motion" and "[t]he general rule is for federal courts to defer ruling on pending motions to remand in [multidistrict litigation]" until after the case is transferred). Thus, to the extent that the law within the Ninth Circuit and the Third Circuit diverges as it relates to the timeliness of J&J's Notice of Removal—which it does not—the law within the Third Circuit should govern.

## III.   This Court has Subject Matter Jurisdiction as "Related To" Debtors' Chapter 11 Case under 28 U.S.C. § 1334(b)

As more fully outlined in J&J's Venue Motion,[11] federal district courts have "related to" jurisdiction over Plaintiffs' personal injury claims against J&J, and all of the State Court Talc Claims, under 28 U.S.C. § 1334(b). Plaintiffs' arguments to the contrary find no support in the facts or in the law.  Plaintiffs rely heavily on *Federal Mogul* to support their argument that "related to" jurisdiction does not exist here because "the indemnification right must 'accrue upon the filing

---

[11] In the interest of economy, J&J respectfully refers the Court to the Statement of Facts and Argument Section II of its Venue Motion for necessary background and preliminary argument on federal courts' jurisdiction over this action.

13

of the civil action in the proceeding related to the bankruptcy case' and be 'clearly established.'" Pls. Mem. at 8 (quoting *In re Fed.-Mogul Glob., Inc.*, 300 F.3d 368, 372, 382 (3d Cir. 2002).[12] *Federal Mogul* is <u>not this case</u>.

*Federal Mogul* involved personal injury and wrongful death asbestos claims brought by tens of thousands of plaintiffs "against various manufacturers and distributors of friction products . . . as well as against companies that made and sold products that incorporated friction products" in their own products. *Id.* at 372. There, eleven movants, primarily automobile manufacturers, sought to remove their cases from state court to the Debtors' bankruptcy proceeding. *In re Fed.-Mogul Glob., Inc.*, 282 B.R. 301, 303 (Bankr. D. Del. 2002). But in asking the related district court to take jurisdiction, the movants "produced no evidence whatsoever of even a bare agreement to indemnify running between the debtors and the solvent co-defendants . . . ." *Id.* at 376 (quoting *In re Fed.-Mogul Glob., Inc.*, 282 B.R. at 311). Only one of the many movants "submitted documents that could even plausibly support a claim based on a written indemnification agreement, namely boiler-plate purchase orders that refer to documents containing indemnification language"—documents the court determined were "'too thin a thread with which to pull [the movants] into the [debtors'] bankruptcy.'" *Id.* at 376 (quoting *Fed.-Mogul Glob., Inc.*, 282 B.R. at 312). More specifically, the lower court declined to "believe that a manufacturer may write its own invitation to the table of any of its suppliers' bankruptcies by including a boilerplate indemnification clause in its purchase orders," rather than negotiating for

---

[12] Plaintiffs purport to quote *Federal Mogul* but actually appear to be quoting, with some error, *In re Lower Bucks Hosp.*, 488 B.R. 303, 314 (E.D. Pa. 2013), aff'd, 571 F. App'x 139 (3d Cir. 2014).

J&J DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION / EMERGENCY MOTION FOR REMAND TO STATE COURT

contractual indemnities. *Fed.-Mogul Glob., Inc.*, 282 B.R. at 312.

Accordingly, the district court determined that "[n]o asset of the estate [was] threatened," and thus the facts did not fit within *Pacor*'s "related to" standard. *Fed.-Mogul Glob.*, *Inc.*, 282 B.R. at 311. On appeal, the Third Circuit, "remain[ing] a step away from reaching the merits" and applying a "clear error" standard of review, simply declined to issue a writ of mandamus with respect to the district court's finding that it lacked "related to" jurisdiction on the basis of the tenuous, common law indemnification and contribution rights. *Id.* at 379-84.

Contrary to Plaintiffs' suggestion, J&J does *not* now attempt to reargue the jurisdictional holding of *Federal Mogul*, nor any of the "proceedings surrounding" it. *See* Pls. Mem. at 16.  Put simply, the facts here are readily and critically distinguishable from Federal Mogul.[13] J&J is the only movant and only J&J's talc products, supplied exclusively by Debtors, are at issue in the State Court Talc Claims. More importantly, as set forth in the Venue Motion, the State Court Talc

---

[13] The other cases on which Plaintiffs rely are likewise factually distinguishable from this case and thus not at odds with J&J's arguments. *See, e.g.*, *Pacor* (no "related to" jurisdiction on the basis of potential non-contractual indemnification claims "not giv[ing] rise to any automatic liability on the part of the estate," and where "[t]here would therefore be no effect on administration of the estate, until such time as Pacor may choose to pursue its third party claim"); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 231-32 (3d Cir. 2004) (noting a lack of "express indemnification obligations" asserted within a prepackaged Chapter 11 reorganization plan that attempted to channel all asbestos claims against debtor and non-debtors through a post-confirmation trust); *In re W.R. Grace & Co.*, 591 F.3d 164, 172-73 (3d Cir. 2009) ("[A]n entirely separate action would be necessary for any liability incurred by Montana to have an impact on Grace's estate. Specifically, Montana would first have to be found liable by its state courts and would then have to successfully bring an indemnification or contribution claim against Grace in the Bankruptcy Court."); *Skylark v. Honeywell Int'l, Inc.*, No. 01-5069-CIV, 2002 WL 32101980, at *3 (S.D. Fla. Jan. 25, 2002) (finding common law cross-claims for indemnity/contribution alone cannot invoke "related to" jurisdiction); *Lent v. Chesterton*, No. C 09-3941, 2009 WL 3561531, at *2 (N.D. Cal. Oct. 27, 2009) (not noting any express contractual indemnification provisions, but nevertheless assuming, "without deciding, that the [claims against non-debtor] are related to the [debtor's] Bankruptcy Case").

J&J DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION / EMERGENCY MOTION FOR REMAND TO STATE COURT

Claims, including Plaintiffs' here, easily satisfy the post-*Pacor* standard for "related to" jurisdiction. Indeed, J&J's indemnification claims against Debtors vested immediately upon the filing of the State Law Talc Claims—without regard to the State Court Talc Claims' resolution in court or the need for subsequent lawsuits—because contractual language states that the Debtors are to <u>defend</u> and indemnify J&J with respect to "all liabilities" implicated in these types of personal injury claims. *See* Dkt. No. 1, Ex. C, Nolan Decl., Ex. 2 (1989 Agreement) § 10; Ex. 3 (2001 Agreement) § 7(a)(iv). Indemnifiable defense costs began accruing on the day Plaintiffs filed their complaint. Thus, the contractual indemnification claims implicated here are *not* contingent on whether or not J&J "denies any liability to plaintiffs." Pls. Mem. at 8. And therefore, there is also *no chance* that "any potential contribution and indemnity claims [could] evaporate," as Plaintiffs contend. *Id.* at 9. No matter the verdict, Plaintiffs' lawsuit against J&J will impact the Debtors' estates. The lower court in *Federal Mogul* specifically recognized that such absolute indemnification rights "plainly establish[] a sufficient nexus between suits against [non-debtors] and the administration of the bankrupt's estate." *In re Fed.-Mogul Glob., Inc.*, 282 B.R. at 309 (citing *A.H. Robins*, 788 F.2d at 1007-08).

Even setting aside the import of J&J's and the Debtors' contractual indemnification obligations, "related to" jurisdiction also exists over this case by virtue of shared insurance between J&J and the Debtors which threatens to deplete the pool of assets in the estate available for creditors. Indeed, the Debtors have represented before the Bankruptcy Court that they "have the right to seek proceeds from various insurance policies issued to J&J and its subsidiaries with total aggregate limits of approximately $2 billion." Dkt. No. 1, Ex. C, Nolan Decl., Ex. 1 (First Day Decl.) ¶ 42. Thus, every dollar J&J spends defending against the State

16

Court Talc Claims depletes a pool of funds that the Debtors have laid claims to, potentially reducing distributions to their creditors. Further, given that the lawsuits involve the same products containing the Debtors' talc, J&J's and the Debtors' shared identity of interests further supports jurisdiction. The case law Plaintiffs wield—including *Federal Mogul*–confirms the decisive impact of these additional bases for jurisdiction.

For example, in *Federal Mogul*, in distinguishing the case before it from *A.H. Robins*, the district court noted that the question of common insurance in *A.H. Robins* "created a link decisively favoring bankruptcy jurisdiction." 282 B.R. at 310. And on appeal, the Third Circuit in *Federal Mogul* cited with approval the Fifth Circuit's analysis in *Arnold v. Garlock, Inc.*, 278 F.3d 426 (5th Cir. 2001), noting that the *Garlock* court distinguished the "unity of identity between the debtor and the [non-debtors]" in *In re Dow Corning Corp*, 86 F.3d at 493, where "each of the [non-debtors] was closely involved in using the same material, originating with the debtor, to make the same, singular product, sold to the same market and incurring substantially similar injuries," from circumstances "where the co-defendants variously use[d] asbestos for brake friction products, insulation, gaskets, and other uses." *Fed.-Mogul Glob., Inc.*, 300 F.3d at 384 (quoting *Garlock, Inc.*, 278 F.3d at 440).[14] The State Court Talc Claims here present

---

[14] *Accord Combustion Eng'g*, 391 F.3d at 230–31 (distinguishing "single product" in *Dow* from claims concerning different products, materials, and markets in *Combustion*). The *Pacor* and *Skylark* decisions Plaintiffs cite, in addition to not involving contractual indemnity claims, also did not involve any shared insurance claims, nor arguments that there was an identity of interests between the movants and debtors. The claims against the state of Montana in *W.R. Grace* did not involve contractual indemnity or shared insurance claims and there, the Third Circuit declined to find that an identity of interests existed between Montana and the debtor, an asbestos product producer because—unlike with J&J and Debtors—these parties' potential liabilities arose from entirely different duties and circumstances. *W.R. Grace & Co.*, 591 F.3d at 173. And in *Combustion Engineering*, the Third Circuit explained that it would have remanded for the district

J&J DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION / EMERGENCY MOTION FOR REMAND TO STATE COURT

precisely the same unity of identity as in *Dow*; they arise out of a single type of product manufactured by J&J and supplied exclusively by Debtors, sold to the same market allegedly incurring the same types of injuries. Thus, they are eminently distinguishable from the claims at issue in *Federal Mogul* and *Garlock*.

Further, it is of no consequence that Debtors are not parties to Plaintiffs' lawsuit, as a Ninth Circuit decision Plaintiffs cite themselves confirms. *See Bethlahmy v. Kuhlman (In re ACI-HDT Supply Co.)*, 205 B.R. 231, 237 (9th Cir. Bankr. App. Panel 1997) ("[A] civil proceeding is 'related to' the bankruptcy if its outcome could conceivably have any effect on the bankruptcy estate. *The proceeding need not be against the debtor or the debtor's property*. It is sufficient if the 'outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.'") (emphasis added) (*quoting In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988)); *see also In re Montreal Maine & Atl. Ry., Ltd.*, No. 1:13-MC-00184-NT, 2014 WL 1155419, at *1, *12 (granting transfer under 28 U.S.C. § 157(b)(5) even though claims against the debtors had been dismissed); *In re W.R. Grace & Co.*, 386 B.R. 17, 23-30 & n.33 (Bankr. D. Del. 2008) (exercising "related to" jurisdiction over more than 100 asbestos-related personal injury suits against non-debtor railroad, most of which did not name any debtors as co-defendants).

---

court to further assess and remedy its "insufficient findings of fact" on shared insurance issues but refrained from doing so on alternative, unrelated grounds. *Combustion Eng'g*, 391 F.3d at 232–33. There, the court also found a "unity of interest" lacking where "the asbestos-related personal injury claims [against debtors and non-debtors arose] from different products, involved different asbestos-containing materials, and were sold to different markets" *Id.* at 231. Again, as in *W.R. Grace*, those facts in no way resembled the exclusive talc supply relationship between Debtors and J&J. *See generally* Venue Motion, Argument II.C.

J&J DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION / EMERGENCY MOTION FOR REMAND TO STATE COURT

## IV.   This Court Should Not Conduct an Abstention Analysis, and Any Such Analysis Disfavors Abstaining Here

### A.   The Delaware District Court is the Proper Court to Conduct an Abstention Analysis

28 U.S.C. § 157(b)(5) instructs "that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, *as determined by the district court in which the bankruptcy case is pending*." (emphasis added). Thus, it is the Delaware District Court's exclusive mandate to set venue. *See Hopkins v. Plant Insulation Co.*, 342 B.R. 703, 708 (D. Del. 2006) (the Delaware District Court recognizing, under § 157(b)(5), its "sole authority to determine the appropriate venue for [actions alleging] personal injury tort and wrongful death claims against, among others, [non-debtors over which the court has 'related to' jurisdiction]" where related bankruptcy is pending in that district); *see also A.H. Robins*, 788 F.2d at 1011 ("Section 157(b)(5) . . . expressly confers on the district court sitting in bankruptcy and having jurisdiction of the bankruptcy proceedings the power to fix the venue of any tort case against the debtor pending in other districts."). And, should the Delaware District Court find that it has jurisdiction, remand will be inappropriate unless *that* court chooses, against a "strong legislative presumption in favor of transfer," to abstain following abstention analyses. *In re Nutraquest, Inc.*, 2004 U.S. Dist. LEXIS 29143, at *43 (quoting *Twin Labs.*, 300 B.R. at 841). Accordingly, because J&J has moved under § 157(b)(5) to fix venue in the Delaware District Court, it is the Delaware District Court rather than this Court that should engage in any abstention analyses or otherwise consider remand issues in the first instance. *Cf., e.g.*, *Hopkins*, 342 B.R. at 710; *New England Compounding*, 496 B.R. at 270.

J&J DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION / EMERGENCY MOTION FOR REMAND TO STATE COURT

**B.      *Mandatory Abstention is Inapplicable Here Because 28 U.S.C.***
**      *§ 157(b)(4) Exempts Personal Injury and Wrongful Death Claims***

Mandatory abstention is inapplicable in this case. Although Plaintiffs rely on 28 U.S.C. § 1334(c)(2), Plaintiffs overlook the exemption Congress created in 28 U.S.C. § 157(b)(4).[15] Under § 157(b)(4), "non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2)." In turn, § 157(b)(2)(B) describes proceedings that may result in "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11."

Courts read the § 157(b)(4) exemption broadly, especially given Congress's recognition of the "potentially deleterious effects on a debtor's estate" that may be caused by "the unpredictable and substantial verdicts that are often produced in personal injury tort and wrongful death claims." *Beck v. Victor Equip. Co.,* 277 B.R. 179, 180–81 (S.D.N.Y. 2002). Thus, the exemption properly applies to personal injury or wrongful death claims against a debtor's indemnitee, like Plaintiffs' claims against J&J. *See, e.g., New England Compounding,* 496 B.R. at 270–72 ("If the underlying harm giving rise to the estate's potential liability involves personal injury or wrongful death, the claim against a third-party concerning that harm is, in substance, a 'personal injury tort or wrongful death claim against the estate' and therefore covered by the exception in § 157(b)(2)(B)."); *Abbatiello v. Monsanto Co.,* No. 06 CIV. 266 (KMW), 2007 WL 747804, at *3 (S.D.N.Y. Mar. 8, 2007) ("Here, the exception to mandatory abstention also applies to litigation against [non-debtors] Pharmacia and New Monsanto, because [debtor] Solutia is obligated to indemnify Pharmacia and New

---

[15] Accordingly, the five pages that Plaintiffs devote to analyzing core and non-core proceedings and mandatory abstention is of no moment. *See* Pls. Mem. at 9-13.

J&J DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION / EMERGENCY MOTION FOR REMAND TO STATE COURT

Monsanto for any judgment awarded against them. Mandatory abstention is thus inapplicable to this action.").[16]

To the extent this Court determines that a mandatory abstention analysis is permissible notwithstanding § 157(b)(4) (it is not), mandatory abstention would nevertheless be inapplicable here, because Plaintiffs could have filed their claims against J&J in this Court. *See* 28 U.S.C. 1334(c)(2) (providing that mandatory abstention is not applicable where the district court would have had another basis for exercising subject matter jurisdiction).[17]  Specifically, this Court would have had subject matter jurisdiction over Plaintiffs' claims against J&J based on the parties' diversity of citizenship and the amount in controversy. *See* 28 U.S.C. § 1332.

### C.    This Court Should Decline to Permissively Abstain

Permissive abstention is also unwarranted. Although a district court may abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law," 28 U.S.C. § 1334(c)(1), courts have questioned whether permissive abstention is proper in connection with a § 157(b)(5) transfer because

---

[16] *See also Hopkins*, 342 B.R. at 709-10 (mandatory abstention does not apply, per § 157(b)(4), "to the liquidation of personal injury tort or wrongful death cases," including those not "against the debtor or the debtor's property"); *Nutraquest, Inc.*, 2004 U.S. Dist. LEXIS 29143, at *44 (concluding mandatory abstention does not apply to cases, including against non-debtors, transferred pursuant to § 157(b)(5)); *Berry v. Pharmacia Corp.*, 316 B.R. 883, 889 (S.D. Miss. 2004) ("[T]he rationale for exempting personal injury and wrongful death claims against the debtor's estate from the mandatory abstention provision applies fully to the claims against [non-debtor defendant].").

[17] Specifically, § 1334(c)(2) provides that mandatory abstention is appropriate where the "action could not have been commenced in a court of the United States absent jurisdiction under this section…" *See also In re Argus Grp. 1700, Inc.*, 206 B.R. 737, 750 (Bankr. E.D. Pa. 1996) (holding mandatory abstention not applicable where "proceeding could have originally been commenced in federal court under federal diversity jurisdiction" and expressly rejecting argument that inability to remove is relevant to the analysis under section 1334(c)(2)).

J&J DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION / EMERGENCY MOTION FOR REMAND TO STATE COURT

of its statutory purpose.[18] Accordingly, permissive abstention should be "rarely invoked" in circumstances like these. *Beck*, 277 B.R. at 181.

Plaintiffs acknowledge that the permissive abstention analysis under 1334(c)(1) is "essentially the same" as an equitable remand analysis under section 1452(b). Pls. Mem. at 3; *see In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 334 (S.D.N.Y. 2003). Accordingly, the same equitable considerations that overwhelmingly support denial of the Remand Motion under section 1452(b), *see infra* Section IV, also disfavor permissive abstention under section 1334(c)(1).[19]

## V. Considerations Under Equitable Remand Support Denying Plaintiffs' Remand Motion

This Court need not expend its resources in deciding the Remand Motion until the Delaware District Court rules on the Venue Motion. But if this Court does determine that it is appropriate to consider the Remand Motion prior to a ruling, it should not exercise its discretion under § 1452(b) to remand this action to the State Court because the equitable considerations favor adjudication of the Talc Claims in a centralized location, i.e., the District of Delaware. Under section 1452(b), "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action *on any equitable ground*." 28 U.S.C. § 1452(b) (emphasis added).

Equitable grounds for remand under § 1452(b) have been interpreted to include a "preference for having an entire dispute resolved in one court." 2 Collier on Bankruptcy ¶ 3.07[5], at 3-85 (Lawrence P. King et al. eds., 15th. ed. rev. 1996). In addition, courts typically consider the following non-exhaustive list of

---

[18] *See Pan Am.*, 950 F.2d at 845 (permissive abstention would "contraven[e] the legislative history"); *Beck*, 277 B.R. at 181 (discretionary abstention would "undercut the statutory purpose of § 157(b)(4)"); *see also Nutraquest, Inc.*, 2004 U.S. Dist. LEXIS 29143, at *43 (recognizing the "strong legislative presumption in favor of transfer under § 157(b)(5) . . . [where] federal courts have a virtually unflagging obligation . . . to exercise" their jurisdiction).

[19] J&J also refers the Court to its Venue Motion, Argument III.B, for a more extensive discussion of the permissive abstention factors under § 1334(c)(1).

J&J DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION / EMERGENCY MOTION FOR REMAND TO STATE COURT

factors in determining whether equitable remand is appropriate: (1) whether remand would prevent uneconomical use of judicial resources; (2) what effect remand would have on the administration of the bankruptcy estate; (3) whether the case involves questions of state law better addressed by state court; (4) comity; (5) prejudice to involuntarily removed parties; (6) whether remand will lessen the possibility of inconsistent results; and (7) the expertise of the court in which the action originated. *See, e.g.*, *In re Riverside Nursing Home*, 144 B.R. 951, 956 (S.D.N.Y 1992); *Williams v. Shell Oil Co.*, 169 B.R. 684, 692–93 (S.D. Cal. 1994).

Here, the flood of personal injury and wrongful death claims arising out of alleged exposure to the Debtors' talc caused the filing of the Debtors' Chapter 11 Case. As explained above, these claims' resolution will impact the bankruptcy estates. Therefore, they will also impact the overall theory, timing, and implementation of any chapter 11 plan. With this in mind, J&J removed this action and invoked § 157(b) in pursuit of a centralized venue for adjudication of the key threshold issues, which can provide equitable and uniform outcomes on those threshold issues for the Debtors' creditors—including the thousands of plaintiffs prosecuting similar claims and actions across the country—the Debtors' themselves, and J&J, and which serves the interests of efficiency and preservation of judicial resources. J&J's goal, through removal and the Venue Motion, is to transfer this action and all State Court Talc Claims to a single court which will prevent disparate outcomes on the key threshold issues. Remand would frustrate this equitable result. Thus, factors (1), (2), and (6) overwhelmingly support denial of the Remand Motion and outweigh any countervailing considerations.

While it is true that Plaintiffs' claims involve questions of state tort law, the state law and comity considerations contemplated in factors (3), (4), and (7) also do not favor remand. By enacting 28 U.S.C. § 157, Congress specifically "singled out" personal injury claims, which are "almost always governed by state law," "as

23

J&J DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION / EMERGENCY MOTION FOR REMAND TO STATE COURT

the very ones it wanted transferred." *In re Twin Labs.*, 300 B.R. at 841. Indeed, the thousands of personal injury claims against the Debtors, which will be handled in Delaware, similarly involve issues of state law. And there can be no reasonable dispute that the District of Delaware to which J&J seeks to transfer Plaintiffs claims along with the State Court Talc Claims is best equipped to address them, collectively, in light of the fact that such claims are proceeding all across the country. Moreover, remand based on predominance of state law questions is only warranted where "a particularly unusual question" or "unsettled questions" of state law exists. *In re Pan Am. Corp.*, 950 F.2d 839, 846 (2d Cir. 1991). Plaintiffs' claims consist of straightforward product liability and negligence claims. Plaintiffs' state court complaint, Dkt. No. 1, Ex. A, asserts causes of action for products liability (manufacturing defect, design defect and failure to warn claims), negligence and loss of consortium. None of the law is "difficult, unsettled, or unfamiliar to a federal court." *See In re Twin Labs.*, 300 B.R. at 841. To the extent comity bears significant weight in the analysis, it supports denial of the Remand Motion pending the District of Delaware's decision on the Venue Motion.

As for factor (5), while Plaintiffs argue that they will be unduly prejudiced if their case is not remanded, they fail to appreciate that there are 2,400 State Court Talc Claims brought by plaintiffs also awaiting their day in court, and nearly all of them have a cancer diagnosis. Declining to remand and allowing the orderly transfer of the State Court Talc Claims, including Plaintiffs', to the Delaware District Court under §§ 157(b)(5) and 1334(b) offers the best chance for an efficient adjudication of *all* plaintiffs' claims while they are still alive. Indeed, J&J's Venue Motion stands to benefit all of Debtors' creditors, including all of the State Court Talc Claim plaintiffs.

For plaintiffs like Ms. Weirick who allege their *in extremis* condition puts them at risk of missing their trial if their claims are transferred, J&J offers *de bene*

*esse* depositions, and also anticipates that if the State Court Talc Claims are transferred, the Delaware District Court in its discretion will consider setting or transferring cases for expeditious jury trials by *in extremis* application. *Cf., e.g., W.R. Grace & Co.*, 386 B.R. at 35-36 (expanding a preliminary injunction to bar prosecution of pending actions against non-debtor railroad over whom the court found "related to" jurisdiction, and weighing the alleged hardship to "sick and dying" claimants caused by expanding the injunction, but finding that "[t]he diversion of time, effort and resources that would be required if the [actions] proceed would further delay the reorganization process, and implicate estate property," and noting that the parties were permitted to pursue testimony preservation procedures upon application). Further mitigating any risk of prejudice, since filing its Venue Motion, J&J has met and will continue to meet all pre-trial deadlines, even where Plaintiffs in this case have not done the same.

## CONCLUSION

For the foregoing reasons, as well as those set forth in J&J's Notice of Removal, this Court should deny Plaintiffs' Remand Motion or, in the alternative, hold the Remand Motion in abeyance pending the forthcoming decision from the Delaware District Court on the Venue Motion.

DATED:  April 24, 2019                KING & SPALDING LLP


                                      By:   */s/ Julia E. Romano*
                                            _____
                                            Julia E. Romano
                                            Attorneys for Defendants
                                            JOHNSON & JOHNSON and
                                            JOHNSON & JOHNSON
                                            CONSUMER INC.

J&J DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION / EMERGENCY MOTION FOR REMAND TO STATE COURT